Fuld, J.
In the three cases under review—one sounding in contract and two in tort—we are called upon to decide whether the courts of this State acquired personal jurisdiction, under our “ long-arm ” statute (CPLR 302), over foreign corporations not “ doing business ” here in the traditional sense. Since there are several questions of law common to all three cases, we discuss such questions generally, at the outset, before undertaking a more particularized consideration of the cases themselves.
It is exceedingly clear that common-law principles of jurisdiction were early imported into the jurisprudence of the several states and have since taken on constitutional character by virtue of Supreme Court rulings that the improper exercise of jurisdiction by state courts infringes due process guarantees. (See, e.g., Pennoyer v. Neff, 95 U. S. 714; Riverside Mills v. Menefee, 237 U. S. 189.) The traditional foundation of judicial jurisdiction is physical power (see McDonald v. Mabee, 243 U. S, 90, 91), and in the case of foreign corporations, with which we are *451 here mainly concerned, unless they have voluntarily submitted to jurisdiction, such power is assertable solely on the basis of the activities of the corporations within the forum state.
The standard for assessing the irreducible minimum forum activities constitutionally requisite to subject foreign corporations and nonresident individuals to personal jurisdiction was reformulated in the cases of International Shoe Co. v. Washington (326 U. S. 310) and McGee v. International Life Ins. Co. (355 U. S. 220). By those decisions, the Supreme Court opened a broad and previously unavailable — although still largely undefined—area for state exercise of jurisdiction over such parties. In place of the former rigid tests of “ residence ” and “doing business ”, the Supreme Court, in International Shoe, substituted the flexible requirement that a nonresident defendant, against whom a judgment in personam is sought in the forum state, be shown merely to ‘ ‘ have certain minimum contacts with it such that the maintenance of the suit does not offend ' traditional notions of fair play and substantial justice ’ ” (326 U. S., at p. 316). And, in McGee, the court upheld the power of a state to subject a foreign corporation to suit in its courts on the basis simply of an isolated insurance contract “ which had substantial connection with that State ” (355 U. S., at p. 223).[1]
But this does not mean, the Supreme Court made clear in the later case of Hanson v. Denckla (357 U. S. 235), that all restrictions on a state court’s exercise of personal jurisdiction over foreign corporations have come to an end. Restating its view that “progress in communications and transportation” has occasioned a relaxation of “ the rigid rule in Pennoyer v. Neff ” and an evolution to “ the flexible standard of International Shoe ”, the court went on to caution that “it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts ” (357 U. S., at p. 251). “ The unilateral activity of those who claim some relationship with a nonresident defendant ”, the court concluded, “ cannot satisfy the requirement of contact with the forum State. * * * [I]t is essential in each ease that there *452 be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws” (357 U. S., at p. 253).
Taking advantage of the Supreme Court’s broadening of the bases for the exercise of personal jurisdiction over nondomiciliaries, the Legislature of this State, in 1962, following a study and a recommendation by the New York Advisory Committee on Practice and Procedure,[2] enacted CPLR 302. Modeled upon a provision of the Illinois Civil Practice Act (Ill. Stat. Ann., ch. 110, § 17 [Smith-Hurd, 1956]), section 302 discarded the concept of “doing business” as the exclusive test of jurisdiction and provided, instead, insofar as here pertinent, that personal jurisdiction may be asserted over any nondomiciliary if, “ in person or through an agent”, he “ transacts any business-within the state ” or “ commits a tortious act within the state,” as long as the particular cause of action asserted is one “ arising from ” any of such acts.[3]
*453 Whether, and to what extent, a statute is to be accorded retroactive application is normally a matter of ascertaining the legislative intent, subject to applicable constitutional limitations, and our decisions provide certain basic guidelines to that end. It is thus presumed, absent any contrary indication, that the Legislature intended “ [c]hanges in the form of remedies ” to be ‘ ‘ applicable to proceedings thereafter instituted for the redress of wrongs already done.” (Matter of Berkovitz v. Arbib & Houlberg, 230 N. Y. 261, 270; see, also, Simonson v. International Bank, 14 N Y 2d 281, 289, supra; Coane v. American Distilling Co., 298 N. Y. 197, 204; Preston Co. v. Funkhouser, 261 N. Y. 140, 145.) On the other hand, where the effect of the statute “is to create a right of action ’ ’ which did not previously exist, it is presumed that the statute was intended to have only prospective application. (See Jacobus v. Colgate, 217 N. Y. 235, 240-242.)
Section 302 is clearly of a procedural and remedial nature, and that, indeed, was the characterization applied by the Supreme Court to the somewhat similar provisions of the California statute before it in the McGee case (355 U. S. 220, supra). In upholding the retroactive application of that statute, the Supreme Court observed that such legislation is “ remedial, in the purest sense of that term, and neither enlarge[s] nor impair [s] * * * substantive rights or obligations ”, its effect being merely to provide the plaintiff with a new “ forum to enforce whatever substantive rights ” he might have against the defendant (355 U. S., at p. 224). And the Illinois Supreme Court reached a like conclusion with respect to the statute from which section 302 was derived, also sustaining its retroactive application to a suit instituted subsequent to its enactment but based on a cause of action which had previously accrued. (See Nelson v. Miller, 11 Ill. 2d 378, 382-383.)
The statute involved in Jacobus v. Colgate (217 N. Y. 235, supra), upon which the appellants before us rely, was of a materially different character. That statute was held, in effect, to have created a new right of action—to have supplied “ a remedy by which a right for the first time [became] enforceable ” (217 N. Y., at p. 242)—by converting what was previ *454 ously an exclusively “local” cause o£ action (for injuries to real property lying without the state) into one which was •“ transitory ” (p. 241). As already noted, section 302, far from creating new rights, merely facilitates the enforcement locally of pre-existing rights.[4] Moreover, the Legislature expressly declared that the CPLR “ shall apply to all actions hereafter commenced” (CPLR 10003; emphasis supplied), thereby giving affirmative indication of its design to apply the statute to all suits instituted after its effective date, whether based on previously or subsequently accrued causes of action. (See 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.04, at p. 3-35.)
The retroactive application of provisions resembling section 302 has, as noted, been upheld as constitutionally valid (see, e.g., McGee v. International Life Ins. Co., 355 U. S. 220, 224, supra; Nelson v. Miller, 11 Ill. 2d 378, 382-383, supra; Bluff Cr. Oil Co. v. Green, 257 F. 2d 83, 85-86), and it is of significance that the Supreme Court, in a very recent decision (United States v. First Nat. City Bank, 379 U. S. 378), apparently perceived no constitutional impediment to our construction giving retroactive effect to section 302, as indicated in Simonson, to the extent of applying it to a “ suit * * * instituted after the effective date of the statute ’ ’ upon the basis of ‘ ‘ transactions occurring before the effective date” (379 U. S., at p. 382; italics in original). While we left open in Simonson the possibility that retroactive application of the statute “ in particular situations” might give rise to constitutional questions (14 N Y 2d, at p. 288), no such exceptional situation is presented in any of the cases before us.
We turn, then, to those specific cases. It is the position of each of the appellants that section 302 may not be interpreted to *455 apply to the particular facts involved and that, if it were to be so construed, the statute Avould violate due process limitations. One of the cases, Longines-Wittnauer Watch Co. v. Barnes & Reinecke, is a suit for breach of contract and turns on paragraph 1 of subdivision (a) of section 302—relating to a defendant’s “ transact [ion of] any business Avithin the state”. The other two—Feathers v. McLucas and Singer v. Walker—are founded on claims of negligence, as well as of breach of warranty, and were decided below on the basis of paragraph 2 of subdivision (a) of section 302 — involving a defendant’s commission of “ a tortious act within the state ’ ’.
*452 The appellants in all three cases- before us, noting that the acts on which the causes of action asserted against them are grounded occurred prior to the effective date of the statute, September 1, 1963, advance the threshold contention that section 302 may not be applied retroactively to subject them to .the personal jurisdiction of the New York courts. We have already expressed a contrary view. In Simonson v. International Bank (14 N Y 2d 281, 290), we declared that “ CPLR 302 has retroactive effect to the extent of embracing suits instituted after its *453 effective date but based on previously accrued causes of action ”, and no reason has been shown to cause us to alter our opinion.
*455 Longines-Wittnauer v. Barnes & Reinecke
The plaintiff Longines-Wittnauer, a New York corporation, seeks damages of some $476,000 for breach of warranty in the manufacture and sale of machines specially designed for it by the appellant Barnes & Beinecke, a Delaware corporation having its place of business in Chicago, Illinois. The parties had carried on negotiations in 1962, the appellant in April and May of that year mailing its contract proposals for the machines to the plaintiff in New York and shortly thereafter sending key officers to this State to discuss the terms of the agreement. After further meetings in Chicago, a written contract in the form of a printed purchase order was executed in June 1962 by the appellant in Chicago, the purchase order itself reciting, however, that it was “ a contract made in the State of New York and governed by the laws thereof ”. Thereafter, officers and employees of the appellant, including its president, treasurer and engineers, twice came to the plaintiff’s plant in Lynbrook on Long Island to discuss certain problems in connection with the performance of the contract. There were meetings in Chicago as well, and in March 1963 a supplemental agreement was executed by the plaintiff in New York after it had been signed by the appellant in Chicago. This agreement increased the price of the machines from $109,000 to $118,000 and provided, among other things, that their delivery did not constitute acceptance, it being specified that such acceptance would occur only after the machines had met certain tests following installation in New York. In. April 1963, a month after the supplemental agreement was executed, the appellant shipped the machines, f. o.b. Chicago, directed to the plaintiff’s plant in Lynbrook *456 and thereafter participated in the installation and testing of the machines; in fact, two of its engineers spent substantially all of their working days at the plaintiff’s plant from April through June 1963 getting the machines ready for acceptance testing.
The plaintiff, following its acceptance of the machines, discovered certain alleged defects, on the strength of which this action was commenced in October 1963, pursuant to CPLR 302 and 313, by service of the summons and complaint on the appellant in Illinois. The latter challenged the court’s jurisdiction over its person by a motion to dismiss the complaint (CPLR 3211, subd. [a], par. 8). The court at Special Term denied the motion, the Appellate Division, First Department, unanimously affirmed the resulting order and the appeal is before us by leave of the Appellate Division on a certified question.
The appellant does not dispute that a single transaction in New York, out of which the cause of action has arisen, may satisfy the requirement of the transaction of business provision (CPLR 302, subd. [a], par. 1). The nub of its argument seems to be that, if the contract was not actually made in New York, its activities in this State preliminary and subsequent to the execution of the contract cannot be regarded as amounting to the transaction of “ business ” under the statute. We find no merit in this contention.
In enacting section 302, the Legislature chose not to fix precise guidelines, as other states have done, so as to draw within the jurisdictional reach of the New York courts only contracts “made within this State ” (Md. Ann. Code, art. 23, § 92, subd. [d]) or contracts “made in this State or to be performed in this State” (N. C. Gen. Stat., § 55-145, subd. [a], par. [1]) or contracts “to be performed in whole or in part by either party in [this State] ” (Minn. Stat. Ann., § 303.13, subd. 1, par. [3]; Tex. Rev. Civ. Stat. Ann. [Vernon], art. 2031b, § 4; Vt. Stat. Ann., tit. 12, § 855). The Advisory Committee which drafted the section took cognizance of such statutes in its report (N. Y. Advisory Comm. Rep. [N. Y. Legis. Doc., 1958, No. 13], pp. 39-40) and decided, instead, to follow the broad, inclusive language of the Illinois provision, adopting as the criterion the “ transact [ion of] any business within the state ”. The design *457 of the legislation, as expressed by the committee, was to take advantage of the “new [jurisdictional] enclave ” (Bomze v. Nardis Sportswear, 165 F. 2d 33, 36, per L. Hand, J.) opened up by International Shoe where the nonresident defendant has engaged in some purposeful activity in this State in connection with the matter in suit. (See N. Y. Advisory Comm. Rep. [N. Y. Legis. Doc., 1958, No. 13], pp. 39-40; see, also, 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.06.) Therefore, even though the last act marking the formal execution of the contract may not have occurred within New York, the statutory test may be satisfied by a showing of other purposeful acts performed by the appellant in this State in relation to the contract, albeit preliminary or subsequent to its execution.[5]
The activities in which the appellant engaged in this State were assuredly adequate to meet the liberal statutory criterion. They comprised substantial preliminary negotiations through high-level personnel during a period of some two months; the actual execution of a supplementary contract; the shipment for use here, subject to acceptance following delivery, of two specially designed machines, priced at the not inconsiderable sum of $118,000; and the rendition of services over a period of some three months by two of the appellant’s top engineers in supervising the installation and testing of the complex machines.[6]
*458 We need not determine whether any one of the foregoing activities would, in and of itself, suffice to meet the statutory standard; in combination they more than meet that standard. And merely to list the activities in which the appellant engaged-in this State answers any constitutional objection which might be raised against requiring the appellant to make its defense in bur courts. Not only did the contract upon which the suit is based have “ substantial connection ” with New York (McGee v. International Ins. Co., 355 U. S. 220, 223, supra) but the appellant’s " contacts ” with this State were such “ that the maintenance of the suit does not offend ‘ traditional notions of fair play and substantial justice’”. (International Shoe Co. v. Washington, 326 U. S. 310, 316, supra.) Nor may it be said that the limits indicated by Hanson v. Denckla (357 U. S. 235, supra) have been exceeded, for it is clear, to cull from the court’s opinion in that case (p. 253), that the appellant “ purposefully avail [ed] itself of the privilege of conducting activities within * * * [this] State ” and thereby “ involved] the benefits and protections of its laws.”
It follows that the courts below were fully justified in sustaining jurisdiction over the appellant Barnes & Reineclce.
Feathers v. McLucas
Mr. and Mrs. Feathers, the plaintiffs in this case, brought suit to recover for serious personal injuries and property damage sustained in July 1962 as a result of an explosion on a public highway near their home in Berlin, New York, of a tractor-drawn steel tank, en route from Pennsylvania to Vermont, which contained highly flammable liquefied propane gas. The tank had been manufactured in Kansas in 1957 by the appellant, The Darby Products of Steel Plate Corporation (sued as The Darby Corporation), a Kansas company, under a contract with the Butler Manufacturing Co., a Missouri corporation, presumably with knowledge that the latter would mount the tank on a wheelbase and then sell it to E. Brooke Matlack, a Pennsylvania corporation, which operated as a licensed interstate carrier in Pennsylvania and several other states, including New York. All three companies were named among the defendants sued, the complaint charging Darby with negligence and breach of warranty in the manufacture of the tank.
*459 Served with a suinmojis and complaint in Kansas, pursuant to CPLR 302 and 313, the appellant moved to dismiss the complaint on the ground that the court lacked jurisdiction of its person (CPLR 3211, subd. [a], par. 8), pointing out that all its business was carried on from its plant and offices in Kansas City, Kansas, and that it never had any agents, representatives, offices or other facilities in this State and never transacted or solicited any business here. The motion was granted at Special Term but its order was reversed by the Appellate Division, Third Department, which granted leave to appeal to this court on a certified question.
There being no showing—indeed, not even a claim—that the appellant transacted any business in this State, within the purview of paragraph 1 of subdivision (a) of CPLR 302, the case necessarily turns on the construction to be accorded paragraph 2. More particularly, we must ascertain whether the facts of the case satisfy the standard of paragraph 2 that the defendant be shown to have “ commit [ted] a tortious act within the state ”.
The tortious act charged against the appellant — that it improperly designed and assembled the tank—indisputably occurred in the out-of-state manufacturing process in Kansas. Nevertheless, the Appellate Division sustained jurisdiction on the strength of the resulting injury in this State, theorizing that ‘ ‘ the Legislature did not intend to separate foreign wrongful acts from resulting forum consequences ”, and it went on to say—directing its attention to the requirements of Federal due process — that section 302 “merely codified the minimum contacts test ” laid down by the Supreme Court decisions.[7]
However, the question presented is not — as the Appellate Division intimated it was by its reference to ‘ ‘ minimum contacts”'—whether the Legislature could constitutionally have *460 enacted legislation expanding the jurisdiction of our courts to the extent determined by the Appellate Division or whether, indeed, the Legislature should have done so in light of the pertinent policy considerations affecting the contending interests of local plaintiffs and foreign manufacturers but whether the Legislature did, in fact, do so. In short, in both this case and Singer v. Walker (infra, p. 464 et seq.), our task is simply to determine the import and scope of the jurisdictional provision which the Legislature actually enacted. As bearing on this, it cannot be made too clear that we are concerned solely with the problem of the court’s jurisdiction over the person of a nonresident defendant and not with the question of his ultimate liability to a particular plaintiff; that issue is to be considered only after it is decided, on the basis of section 302, that the defendant is subject to the in personam jurisdiction of our courts.
The language of paragraph 2 — conferring personal jurisdiction over a nondomiciliary “ if, in person or through an agent, he * * * commits a tortious act within the state” — is too plain and precise to permit it to be read, as has the Appellate Division, as if it were synonymous with ‘ ‘ commits a tortious act tvithout the state which causes injury within the state.” The mere occurrence of the injury in this State certainly cannot serve to transmute an out-of-state tortious act into one committed here within the sense of the statutory wording. (See Atkins v. Jones & Laughlin Steel Corp., 258 Minn. 571, 579-580; Rufo v. Bastian-Blessing Co., 405 Pa. 12, 20; Hellriegel v. Sears Roebuck & Co., 157 F. Supp. 718, 720-721.) Any possible doubt on this score is dispelled by the fact that the draftsmen of section 302 pointedly announced that their purpose was to confer on the court “ personal jurisdiction over a non-domiciliary whose act in the state gives rise to a cause of action ” or, stated somewhat differently, ‘ to subject non-residents to personal jurisdiction when they commit acts within the state”. (See N. Y. Advisory Comm. Rep. [N. Y. Legis. Doc., 1958, No. 13], pp. 37, 39; emphasis supplied.) Having in mind the plain language of the statute and the expressed design of those who drafted it, we deem unreasonable the interpretation urged upon us by the plaintiffs.
*461 It is not inappropriate to note that for some years prior to the enactment of CPLR 302 much attention had been given to the subject of state exercise of personal jurisdiction over a nonresident manufacturer charged with tortious activities in the manufacture of a product in another state which caused injury in the forum where the product was eventually marketed and sold[8] and that legislation expressly conferring jurisdiction on that basis had been enacted in a number of states.[9] If, in fact, the Legislature of this State had intended to confer jurisdiction on the strength of injurious forum consequences alone, without regard to the locus of the commission of the tortious act itself, it would presumably have used language appropriate to reflect such a design. Thus, it could have made explicit provision for such situations as some states have done,[10] or as proposed by the New York Law Revision Commission [11] or by the Commis *462 sioncrs on Uniform State Laws in their model'act,[12] or it might have followed the lead of other states Avhi'ch require only that the “ tort ” be shown to have been committed within the state “in whole or in part”.[13] In sharp contrast, the Legislature chose to adopt language which, in so many words, demands that the “tortious act” be one committed by the defendant, “in person or through an agent,” within this State.
Our attention is directed to the broad interpretation accorded in Gray v. American Radiator & Sanitary Corp. (22 Ill. 2d 432) to the similarly worded provision of the Illinois statute — relating to the commission of a tortious act within the state — on which paragraph 2 of subdivision (a) of section 302 was modeled. Although our analysis of New York’s statute and its legislative history demonstrates that reliance on the Gray case is misplaced, we deem it desirable to examine its underlying rationale in view of the emphasis given the decision by the appellants in this case and in Singer v. Walker (infra, p. 464 et seq.). In Gray, an Illinois resident, injured in that state as a result of an explosion of a water heater which had, in the court’s words, found its way into Illinois “ in the course of *463 commerce ” (22 Ill. 2d, at p. 438), brought suit against an Ohio corporation which had (it was alleged) negligently manufactured in Ohio a safety valve later incorporated into the heater. The heater itself had been assembled in Pennsylvania by a Pennsylvania corporation which had purchased the valve from the Ohio manufacturer. In rejecting the defendant’s contention that it had not committed “ a tortious act ” in Illinois, the court invoked the traditional choice uMaw rule that “the place of a wrong is where the last event takes place which is necessary to render the actor liable ” (p. 435) and concluded that, since the “ last event ”, that is, the injury, had occurred in Illinois, “ the 'tort was committed in Illinois ” for purposes of the jurisdictional statute (p. 436).
We find this argument unconvincing.[14] It certainly does not follow that, if the “place of wrong” for purposes of conflict of laws is a particular state, the “ place of the commission of a tortious act ” is also that same state for purposes of interpreting a statute conferring jurisdiction, on that basis, over nonresidents. (See, e.g., Hanson v. Denckla, 357 U. S. 235, 253-254, supra; O’Brien v. Comstock Foods, 123 Vt. 461, 465.) Not oiily are these separate and distinct problems but the rules formulated to govern their resolution embody different concepts expressed in different language. Moreover, the place of the “ tort ” is not necessarily the same as the place of the defendant’s commission of the “tortious act”. In our view, then, the interpretation accorded the statute by the Illinois court disregards its plain language and exceeds the bounds of sound statutory construction. (See McMahon v. Boeing Airplane Co., 199 F. Supp. 908, 909; Atkins v. Jones & Laughlin Steel Corp., 258 Minn. 571, 579-580, supra; Rufo v. Bastian-Blessing Co., 405 Pa. 12, 20, supra; see, also, Reese & Galston, Doing an Act or Causing Consequences as Bases of Judicial Jurisdiction, 44 Iowa L. Rev. 249, 266-267; Stimson, Omnibus Statutes *464 Designed to Secure Jurisdiction Over Out-of-State Defendants, 48 Amer. Bar Assn. J. 725, 727; Thornton, First Judicial Interpretations of the New York Single Act Statute, 30 Brooklyn L. Rev. 285, 291-292; Note, 50 Georgetown L. J. 310.)[15]
Beading the New York statute, as we do, to require á showing that the nondomiciliary committed a tortious act in this State, we need not pass upon the constitutional question raised by the appellant or consider whether the due process requirement of “ minimum contacts ” with the forum state would be satisfied "by evidence that the injury occurred here and that the appellant presumably knew that its product (the tank) might ultimately reach New York in the course of its use by an interstate carrier or trucker. (See, e.g., Hanson v. Denckla, 357 U. S. 235, 253, supra; Dooly v. Payne, 326 F. 2d 941; O’Brien v. Comstock Foods, 123 Vt. 461, supra.)
In sum, then, it is our conclusion, based not only on the plain language of the statute but on its legislative history, that paragraph 2 of subdivision (a) of section 302 covers only a tortious act committed (by a nondomiciliary) in this State. Any plea for further expansion of its scope, however desirable such expansion may seem, is a matter for the Legislature rather than the courts. It follows, therefore, that, since the tortious act charged-against the appellant Darby was committed, if at all, in Kansas and since, concededly, that company transacted no business whatsoever in New York, no basis exists in the present case for subjecting it to the jurisdiction of the courts of this State.
Singer v. Walker
The complaint alleges that in April of 1960 Michael Singer, then 10 years old and a resident of this State, was seriously injured when a geologist’s hammer which he was using in *465 Connecticut broke and a chip penetrated his right eye. The hammer, it is further recited, was manufactured by the appellant Estwing Manufacturing Co., an Illinois corporation not doing business in this State. Bearing a label, “ Unbreakable Tools Estwing Mtg. Co.”, the hammer was shipped by the appellant, f. o. b. Illinois, to the defendant Walker, a dealer in geological supplies in New York City. Michael’s aunt purchased the hammer from Walker and gave it to the child a month or two before the accident, which, as stated, occurred in Connecticut when the hammer fragmented while the youngster, on a field trip with his father, was using it to break and split rock.
Service of process on the appellant in an action brought in this State prior to the enactment of section 302 was set aside on the ground that it was not “ doing business ” in New York under the jurisdictional standards then applied by our courts. (Cf. Simonson v. International Bank, 14 N Y 2d 281, supra.) The present action was brought, after the effective date of section 302, by service of the summons and complaint on Estwing in Illinois (CPLR 313). Its motion to dismiss the complaint on the ground that the court had not acquired personal jurisdiction (CPLR 3211, subd. [a], par. 8) was granted at Special Term “ [s]ince the tortious act complained of did not take place in this state or arise * * * [from] any transaction of business by defendant in this state ”. The Appellate Division, First Department, taking a different view, reversed ‘ ‘ on the law ’ ’ and denied the motion, holding that the cause of action was one arising from the commission of a tortious act in the State under paragraph 2 of subdivision (a) of section 302.
Our detailed analysis of that provision in Feathers v. McLucas (supra, pp. 458-464) and of paragraph 1 in Longines-Wittnauer v. Barnes & Reinecke (supra, pp. 455-458) permits us to be brief in treating this third case. And we note again that we deal with the case in the light of the statutory provision as it actually reads and not as it could, perhaps, have been written.
Manifestly, the tortious acts attributed to the appellant in the manufacture and labeling of the hammer occurred at the place of manufacture in Illinois and, as in Feathers, are wholly insufficient to satisfy the requirement of paragraph 2 that the *466 “ tortious act ” be one committed “ within ” this State.[16] The Appellate Division, nevertheless, sustained jurisdiction on the theory that Estwing’s “circulation ” in New York of a hammer mislabeled as unbreakable — thereby creating, as that court put it, a continuing condition of hazard wherever the article was sold — itself constituted the commission of a tortious act here. We cannot accept this reasoning. The mere fact that a product defectively manufactured and misleadingly labeled in one state is marketed and sold in another cannot serve to change the place where the original tortious acts were committed or to create a new tortious act: The tortious conduct charged to the appellant consists solely of its acts in manufacturing an assertedly defective hammer and in attaching to it a false label, both of which unquestionably took place in Illinois. Accordingly, as the tidal judge correctly concluded, jurisdiction cannot be sustained under paragraph 2.
However, the question remains whether jurisdiction may be upheld under paragraph 1 on the ground that the appellant “ transact[ed] * * * business within the state ” and that the pleaded cause of action is one " arising ’ ’ therefrom. It is clear that paragraph 1 is not limited to actions in contract; it applies as well to actions in tort when supported by a sufficient showing of facts. (See N. Y. Advisory Comm. Rep. [N. Y. Legis. Doc., 1958, No. 13], p. 39; see, also, Notes of Commissioners on Uniform State Laws, Uniform Laws Ann., vol. 9B [Supp. 1964], p. 78.)
The record, although conflicting in some respects, does establish certain facts as to which there is no substantial dispute — namely, that the appellant has shipped substantial quantities of its products into this State as the result of solicitation here through a local manufacturer’s representative and through catalogues and advertisements and that the injury-causing hammer, purchased from a New York dealer, was one of such products. The Appellate Division, in view of its conclusion *467 predicatod on paragraph 2, apparently found it unnecessary to consider the applicability of paragraph 1. But in its opinion the court did call attention to facts which demonstrated that the appellant transacted business here and which, in its view, provided the requisite nexus with this State demanded by due process.
We hold that the appellant’s activities in this State are sufficient to satisfy the statutory criterion of transaction of business as well as the constitutional requirement of “ minimum contacts ”. (See International Shoe Co. v. Washington, 326 U. S. 310, 319-320, supra; McGee v. International Ins. Co., 355 U. S. 220, 223, supra.) For the reasons we gave in rejecting a similar contention in the Longines-Wittnauer case (supra, pp. 456, 458), we do not deem it determinative, as urged by the appellant, that the formal execution of its sales contracts may have occurred in Illinois rather than New York. Nor is it a controlling consideration that the actual injury happened to take place in Connecticut, since the cause of action asserted is clearly one “arising from” the purposeful activities engaged In by the appellant in this State in connection with the sale of its products in the New York market.
In sum, then, the Appellate Division was in error in holding paragraph 2 applicable; nevertheless, on the strength of paragraph 1, we affirm its order sustaining jurisdiction over the appellant. / .......
1. In Longines-Wittnauer v. Barnes & Reinecke, the order of the Appellate Division should be affirmed, wiah costs, and the certified question answered in the affirmative'.
2. In Feathers v. McLucas, the order of thd Appellate Division should be reversed, the order of SpeciaLTerm reinstated, with costs in this court and in the Appellate Division, and the certified question answered in the negative.
3. In Singer v. Walker, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative. /

. The foreign corporation in McGee maintained no office or agent in the forum state and had apparently never solicited or done any business there apart from writing the policy in question (355 U. S., at p. 222).

. See N. Y. Advisory Comm. Rep. (N. Y. Legis. Doc., 1958, No. 13), pp. 37-41; see, also, Senate Finance Comm. Rep. (N. Y. Legis. Doc., 1961, No. 15), pp. 7-10, 66-67.

. 'The entire text of subdivision (a), the portion of the statute with which we are concerned, reads as follows:
■ “ (a) Acts which are the basis of jurisdiction. A court may exercise -personal jurisdiction over any non-domieiliary, or his executor or administrator, as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:
“1. transacts any business within the state; or
“ 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
“ 3. owns, uses or possesses any real property situated within the state.”

. Since section 302 rests not on any theory of implied consent on the part of the defendant to: submit to this State’s jurisdiction if he commits acts herein but, rather, on New York’s inherent power to exercise jurisdiction over a nonresident defendant who has the requisite minimal contacts with it (see N. Y. Advisory Comm. Rep. [N. Y. Legis. Doc., 1958, No. 13], pp. 39-41; see, also, 1 Weinstein-Ivorn-Miller, -N. Y. Civ. Prac., par. 302.0-1), the decisions — to which the appellants point — denying retroactive effect to statutes predicated on a theory of implied consent, such as the original nonresident motorist statutes (see, e.g., Kurland v. Chernobil, 260 N. Y. 254, 257; Gruber v. Wilson, 276 N. Y. 135, 140), are not here in point.

. While by no means controlling, it is worthy of some note that the decisions interpreting the Illinois statute—on which, as we have noted, section 302 is modeled—have held that the place of contracting is not the exclusive criterion, and that the requisite transaction of business by the nonresident defendant within the forum may consist of such activity on his part as engaging in preliminary negotiations for the contract or in subsequent acts in furtherance thereof, the issue turning, in essence, on the totality of the defendant’s activities within the forum. (See Kropp Forge Co. v. Jawitz, 37 Ill. App. 2d 475, 481; Berlemann v. Superior Distr. Co., 17 Ill. App. 2d 522; National Gas Appliance Corp. v. AB Electrolux, 270 F. 2d 472, cert. den. 361 U. S. 959; Magnaflux Corp. v. Foerster, 223 F. Supp. 552; but cf. Grobark v. Addo Mach. Co., 16 Ill. 2d 426; see, also, Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 U. of Ill. L. Forum 533, 566-579.)

. We do no more than note the added fact that the contract itself expressed the agreement of the parties that it was to be regarded as having been made in New York and as governed by New York law. (Cf. National Rental v. Szukhent, 375 U. S. 311, 315-316.)

. It was the Appellate Division’s conclusion that the “minimum contacts” test was satisfied by the showing that the tank, with its load of flammable liquid, was “ an instrumentality dangerous to life and property, if defectively constructed”, and that the appellant had “knowledge” that the tank was designed for ultimate use by a Pennsylvania carrier in interstate commerce and “ could be expected reasonably to foresee that its acts, if wrongful, might well have potential consequences in adjoining New York.”

. See, e.g., N. Y. Law Rev. Comm. Study, Service of Process on Foreign Corporations (N. Y. Legis. Doc., 1959, No. 65[C]), p. 17 et seg.; Foster, Expanding Jurisdiction Over Nonresidents, Wis. Bar Bull. Supp., Oct. 1959, pp. 15-20; Reese, Judicial Jurisdiction Over Non-Residents, 13 Record of N. Y. C. Bar Assn., 139, 149-153; Reese & Galston, Doing An Act or Causing Consequences as Bases of Judicial Jurisdiction, 44 Iowa L. Rev. 249; see, also, 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.10; Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 U. of Ill. L. Forum 533, 544-560.

. See, e.g., Conn. Gen. Stat. Ann., § 33-411, subd. (c), par. (3); Mont. Rules Civ. Pro., rule 4, subd. (B), par. (1), cl. (b); N. C. Gen. Stat., § 55-145, subd. (a), par. (3); Wis. Stat. Ann., § 262.05, subd. (4). The Connecticut statute, for instance, authorizes the exercise of jurisdiction over a foreign corporation, not otherwise transacting business in the forum, in any action arising out of the production, manufacture or distribution of goods in another state with the reasonable expectation of their being used or consumed in the forum state.

. See statutes cited, supra, n. 9.

. See N. Y. Law Rev. Comm. Rep. (N. Y. Legis. Doc., 1959, No. 65[C]), p. 3. The Law Revision Commission in 1959 proposed that section 229-a of the Civil Practice Act be amended to provide for jurisdiction over foreign corporations, not otherwise doing business here, where the action “ arises out of * * * (e) Commission of any act resulting in this state * * * in injury to person or property, if the corporation * * * should reasonably have expected that the act would have consequences in this state; (d) Production [or] manufacture * * * of goods * * * where the goods * * * are used * * * or resold in this state * * * and the corporation * * * should reasonably have expected that they would be so used * * » [or] resold ”.

. See Uniform Interstate and International Procedure Act, § 1.03, subd. (a), Uniform Laws Ann., vol. 9B (Supp. 1964). The model statute drafted by the Commissioners on Uniform State Laws significantly differentiates between a case in which the tortious injury was committed “by an act or omission in this state” and one where such injury was committed “by an act or omission outside this state ”; in the latter situation, the statute requires, as an additional condition for the exercise of jurisdiction, that there be a showing that the nonresident defendant “regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state ”. (Uniform Interstate and International Procedure Act, § 1.03, subd. [a], pars. [3], [4]; see, also, Va. Code Ann., § 8-81.2, subd. [a], pars. [3], [4].)

. See, e.g., Minn. Stat. Ann., § 303.13, subd. 1, par. (3); Tex. Rev. Civ. Stat. Ann. (Vernon), art. 2031b, § 4; Vt. Stat. Ann., tit. 12, § 855. It has been held that such a statute—based on the commission within the state of the “tort in whole or in part”—is distinguishable from a statute, such as paragraph 2 of subdivision (a) of section 302, which requires the commission of the “tortious act” within the state, and, unlike the latter legislation, is sufficiently broad to confer jurisdiction in a case involving an out-of-state tortious act which results in injurious consequences within the forum state. (See, e.g., Atkins v. Jones & Laughlin Steel Corp., 258 Minn. 571, 579-580, supra.)

. It is noteworthy that, prior to the decision in Gray, the Federal courts in Illinois had given a contrary interpretation to the statute, holding, in accordance with its plain language, that the provision was not meant to sanction jurisdiction over a nonresident manufacturer whose wrongful act outside the state caused an injury within the state. (See Hellriegel v. Sears Roebuck & Co., 157 F. Supp. 718, 720-721, supra; Trippe Mfg. Co. v. Spencer Gifts, 270 F. 2d 821, 823; Insull v. New York World-Tel. Corp., 273 F. 2d 166, 171.)

. The Illinois court, seeking to bolster its decision, further declared that “it [was] a reasonable inference that [the defendant’s] commercial transactions * * * result[ed] in substantial use and consumption in this State” (22 Ill. 2d, at p. 442). If, as was thus assumed, there were substantial sales of the defendant’s product within the State of Illinois, that factor might have served to support a finding that jurisdiction existed on the basis of the “ transaction of business” provision (infra, pp. 466-467) but it has no relevance on whether the defendant committed a tortious act within the state.

. Quite obviously, eases such as Thomas v. Winchester (6 N. Y. 397), Smith v. Peerless Glass Co. (259 N. Y. 292) and Greenberg v. Lorenz (9 N Y 2d 195) —cited in the concurring opinion of the Chief Judge (pp. 471-472) — which deal solely with the question of “ liability ”, have nothing to do with the problem of “ jurisdiction ”. As we have already made clear in our discussion of the Feathers case (supra, pp. 459-460), we are concerned on these appeals only with, the question of the court’s jurisdiction over the defendant and not at all with the issue of its liability.