**ROCKE INTERNATIONAL CORPORATION, Plaintiff,**

v.

**VICTORY ENGINEERING CORPORATION, Defendant.**

**No. 72-C-1035.**

United States District Court,
E. D. New York.

Jan. 22, 1973.

Friedmann & Fischman, New York City, for plaintiff; William D. Friedmann, New York City, of counsel.

Arthur Chodosh, New York City, for defendant.

BARTELS, District Judge.

Plaintiff sues to recover $16,591.27, allegedly due from the defendant for commissions on sales made by plaintiff of defendant's products overseas. Service of the summons and complaint was made at defendant's offices in Springfield, New Jersey. Defendant moves for dismissal of the action or, in lieu thereof, to quash the return of the service of the summons on the ground that defendant is a Delaware corporation with offices in Springfield, New Jersey, and, in support thereof, refers to Rule 4(f) of the Federal Rules of Civil Procedure, 28 U.S.C., providing that process may be served only within the territorial limits of the State in which a district court is held. Rule 4(f) of the Federal Rules of Civil Procedure, however, must be read in the light of Rule 4(e), supplemented by Rule 4(d)(7), of the Federal Rules of Civil Procedure, as amended in 1963, which authorizes service under the so-called "long-arm" State statute. And, when so read, Rule 4(f) is no barrier to service under such statute made outside the State. 2 Moore's Fed. Practice, 4:41–1(3), at 1291.56–57 (2d ed. 1970).

Under the circumstances, New York *in personam* jurisdiction over this non-domiciliary defendant depends on CPLR § 302(a)(1), authorizing personal jurisdiction as to a cause of action arising out of any act of a non-domiciliary who "transacts any business within the state," either in person or through an agent. Plaintiff claims that defendant's activities in New York were adequate to meet the statutory criterion of CPLR § 302(a)(1), providing for "long-arm" State jurisdiction. It is well established that each "long-arm" jurisdiction case is *sui generis* and must be determined upon its particular facts. Based upon the affidavits submitted on the motion and the evidence adduced at the hearing held at the court's suggestion, the following facts appear.

Prior to January 19, 1968, defendant entered negotiations with plaintiff in New York for a contract providing that plaintiff would sell defendant's products overseas, in the course of which defendant's representatives came to New York and examined plaintiff's facilities, such as bookkeeping, accounting procedures, and warehouses, to ascertain if plaintiff

had the ability to perform the agreement. Defendant thereafter, about January 23, 1968, sent a contract signed by it, from New Jersey to New York, where plaintiff signed the same as requested and mailed it to the defendant, thus executing the contract in New York.[1] Substantial quantities of defendant's products are shipped into New York pursuant to orders given under this contract. In effect, plaintiff was appointed as a sales agent for defendant for overseas sales of its products. Once a year defendant's representatives, including its officers, would attend the electrical engineering show held in New York, at which time defendant would entertain prospective buyers from all over the United States and would exhibit its products, including new products. At this meeting there were sales personnel, engineering, and managing personnel of prospective purchasers.[2]

Sometime after the contract was executed, plaintiff fell into financial difficulties and subsequently was appointed a debtor-in-possession under a Chapter XI proceeding. Defendant's representatives then came to New York in order to collect past due accounts from plaintiff and for that purpose had meetings in New York with plaintiff concerning its financial condition. Following the Chapter XI proceeding, defendant entered into a new contract in New York with C. Tennant & Sons for the sale overseas of its products, similar to the one executed with the plaintiff. At approximately the same time defendant's representatives came to New York to negotiate a contract with International Telephone & Telegraph Company (ITT) to substitute its subsidiary for plaintiff with respect to certain orders from ITT covered in plaintiff's agreement. These negotiations culminated in a contract executed in New York between defendant and the ITT subsidiary, i. e., ITT Export Company, concerning sales of certain of defendant's products overseas. Moreover, defendant sold and still sells certain of its products directly to Xerox Company in Rochester, New York, in connection with which defendant's representatives visit Rochester to discuss orders and thereafter Xerox Company mails purchase orders for defendant's products to the defendant in New Jersey, where they are accepted and shipped to New York.

For the resolution of this jurisdictional question, a number of New York decisions lay down the general guidelines which are most pertinent. Only a few will be cited. For example, it has been held that the mere shipment of goods into New York (Kramer v. Vogl, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966)); Willner v. Thompson, 285 F.Supp. 394 (E.D.N.Y. 1968), and the mere signing of a contract in New York (Singer v. Walker, 15 N.Y.2d 443, 467, 261 N.Y.S.2d 8, 26, 209 N.E.2d 68, 82 (1965)), and the mere granting of exclusive rights to market products shipped into New York (Kra-

1. The form in which the contract is cast beclouds the relationship between the parties. In paragraph 7 it appears that defendant's products are to be sold and invoiced to the plaintiff, while in paragraph 1 defendant appoints the plaintiff "exclusive export managers and exclusive export representatives" of defendant; paragraph 5 requires the plaintiff "to perform all functions of an Export Department," and finally, paragraph 7 provides that invoices to the plaintiff are to be paid "by means of trade acceptance which can be presented for payment within thirty (30) days after the date of invoice _ _ _." Scaled discounts are allowed plaintiff on current prices. In substance, this contract appoints plaintiff in New York as a sales agent who is compensated by "commissions" denominated as "discounts."

2. In its 1968 advertising bulletin defendant announced this show in the following words: "The 1968 I.E.E.E. Show will be held at the New York Coliseum March 18, 19 and 20th. It is expected to be the largest in Show history. As in the past, VECO will maintain a hospitality suite at the Holiday Inn at 440 West 57th St., New York City. For Reps and customers visiting the I.E.E.E. Show, tours to and through the VECO plant at Springfield will be held during the Show Week."

mer v. Vogl, *supra*; A Millner Company, Inc. v. Noudar, LDA, 24 A.D.2d 326, 266 N.Y.S.2d 289 (1st Dept. 1966)) are insufficient contacts to satisfy the jurisdictional requirements. On the other hand, it has been held that a foreign corporation which sends its employees into the State for the express purpose of promoting and conducting business, Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8, 19, 209 N.E.2d 68, 76, (1965), or which ships substantial quantities of goods into New York in response to orders solicited through advertisements, Lewin v. Bock Laundry Mach. Co., 16 N.Y.2d 1070, 266 N.Y.S.2d 391, 213 N.E.2d 686 (1965), subjects itself to the jurisdiction of the State since it has purposefully availed itself of the benefit and protection of the New York laws in connection with its activities. See, Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951 (2d Cir. 1967); Willner v. Thompson, *supra* at 396.

In this case the court concludes that defendant's activities fell within the reach of Section 302(a)(1), CPLR, and, in fact, exceeded the minimum contacts necessary to constitutionally subject it to the personal jurisdiction of the State of New York. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The fact that the defendant maintains no office, warehouse, bank account, or telephone listing in New York, nor owns any real estate here, is insufficient to provide jurisdictional exemption when the totality of its activities and contacts within the State is such as to establish a substantial connection with the State. See, Montclair Electronics, Inc. v. Electra/Midland Corp., 326 F.Supp. 839 (S.D. N.Y.1971); International Shoe Co. v. Washington, *supra*.

For the above reasons, defendant's motion is hereby denied. So ordered.