Frances J. MARKHAM and George W. Markham, Appellants,

v.

William H. ANDERSON, Jr., Appellee.

No. 82, Docket 75-7335.

United States Court of Appeals, Second Circuit.

Argued Nov. 24, 1975.

Decided Feb. 13, 1976.

George I. Janow, New York City (Knox, Graham, Pearson, McLaughlin & Sennett, Erie, Pa.), for appellee.

Stephen Teret, Westfield, N. Y. (Brandt & Laughlin, P. C., Westfield, N. Y.), for appellants.

Before MOORE and TIMBERS, Circuit Judges, and COFFRIN,* District Judge.

COFFRIN, District Judge:

In February, 1972 a truck driven by Robert Gray struck a toll-booth on the New York Thruway causing injury to appellant Frances Markham, who alleges that Gray, a diabetic, was in a semi-comatose state caused by insulin deficiencies. Appellee Anderson was Gray's physician. His office is located in West Springfield, Pennsylvania, a town bordering Ohio, and his practice is extensive both in Pennsylvania and Ohio.[1]

 Anderson examined Gray in Pennsylvania in 1971 and certified that Gray was

---

* Honorable Albert W. Coffrin of the United States District Court for the District of Vermont, sitting by designation.

1. Dr. Anderson's answer to interrogatories revealed that approximately 60 percent of the patients he treats in his Pennsylvania office are citizens of Ohio, approximately 75 percent of the patients who were treated or examined by Dr. Anderson in Pennsylvania in 1973 and required hospital care during the course of his treatment were referred by him to Brown Memorial Hospital in Conneaut, Ohio, and approximately 14 hours per week (two hours per day,

physically qualified under federal regulations to operate a commercial truck. Plaintiffs alleged that Anderson's certification of Gray constituted a negligent misrepresentation, since federal regulations applicable at the time of Anderson's examination provided that a truck driver such as Gray, who required insulin to control a diabetic condition, was not qualified to operate commercial trucks. Markham and her husband brought a diversity action in the District Court for the Western District of New York under 28 U.S.C. § 1332 against Anderson, Gray and Gray's employer, the trucking company. Anderson was personally served in Pennsylvania under CPLR § 302(a)(3)(ii),[2] on the basis of claims that: (1) he had committed a tortious act outside New York, which (2) caused injury to Markham inside New York, (3) he should reasonably have expected the act to have consequences in the state, and (4) he derived substantial revenue from interstate commerce.

Anderson moved to quash the service and dismiss the complaint on the grounds that Anderson was not subject to personal jurisdiction in New York under CPLR § 302. On May 1, 1975 Judge Curtin dismissed the complaint for lack of personal jurisdiction on the grounds that Dr. Anderson did *not* "derive substantial revenue from interstate commerce" within the meaning of the long-arm statute.

The District Court gave two reasons to support its conclusion. First, the Court observed that the New York Legislature, in promulgating the "substantiality" requirement of CPLR § 302(a)(3), did not intend to subject nonresidents such as Dr. Anderson, whose business activities are "essentially local in nature", to long-arm jurisdiction.[3] The fact that Dr. Anderson practiced medicine in two states was not considered controlling by the Court, since Dr. Anderson was not the type of nonresident that the legislature "expected or considered capable of defending suits in foreign forums." Second, the Court reasoned that even if Dr. Anderson's medical practice was "interstate", it did not constitute "commerce" for purposes of long-arm jurisdiction, since it

seven days per week) are spent by Dr. Anderson making rounds and performing surgery in Brown Memorial Hospital.

**2.** New York Civil Practice Law and Rules § 302(a)(3)(ii) provides as follows:

§ 302. *Personal jurisdiction by acts of non-domiciliaries.*

(a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

. . . 3. commits a tortious act without the state causing the injury to person or property within the state, except as to a cause of action for defamation of character arising from the Act, if he

. . . (ii) expects or should reasonably expect the act to have consequences in the state and derives a substantial revenue from interstate commerce or international commerce.

**3.** Prior to the addition of CPLR § 302(a)(3) in 1966, the long-arm statute had been narrowly interpreted by the New York Court of Appeals so as not to reach non-residents who caused tortious injury in the state by an act or omission without the state. *Feathers v. McLucas,*

15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). The 1966 amendment was intended to close this gap in the long-arm jurisdiction over non-residents. 1966 *McKinney's Session Laws* at 2788. However, as a matter of policy, the amendment was designed so that jurisdiction would not be exercised over a person who caused tortious injuries in the state by acts or omissions outside the state "*unless* he had other contacts with the state or *unless* he was engaged in extensive business activities on an interstate or international level . . . ." (emphasis supplied) *Ibid.* The Judicial Conference therefore fashioned an amendment which would be "broad enough to protect New York residents yet not so broad as to burden unfairly non-residents whose connection with the state is remote." *Ibid.* As an example of the sort of non-resident whose interstate business would not be sufficiently connected with interstate commerce, the Judicial Conference mentioned a local tire retailer in Georgia who sells a defective tire to a New Yorker driving a car with New York plates. While the retailer might foresee the possibility of injury in New York and while the due process clause might permit jurisdiction over him, the Conference concluded that jurisdiction would be unfair, where the retailer had so few contacts with New York.

was a profession, not a business. This conclusion was based on an analogy to antitrust cases, which, at the time of the Court's opinion, suggested that professions were not engaged in "commerce" for antitrust purposes.[4]

On appeal, appellant stresses the fact that since the writing of the opinion below, the Supreme Court has ruled that rendition of professional services constitutes "commerce" under the Sherman Anti-Trust Act. *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). We agree with appellant's interpretation of *Goldfarb*, but do not agree that judicial interpretation of the Sherman Act is binding or even significant in a case interpreting the New York long-arm statute, since the two statutes were intended to have wholly different functions. In our view it is unnecessary to decide whether the practice of medicine by a physician is "commerce" for jurisdictional purposes, since we agree with the conclusion of the District Court that Dr. Anderson's interstate activities, whether commerce or not, are not "substantial" within the meaning of CPLR § 302(a)(3)(ii).

This conclusion is fully supported by the Report of the Judicial Conference cited in Judge Curtin's opinion.[5] 1966 McKinney's Session Laws, 2786 *et seq.* We therefore adopt and see no need to repeat the District Court's analysis of the legislative intent underlying § 302(a)(3)(ii). It is sufficient to note that Dr. Anderson is a small-town doctor who has no on-going contacts with New York and whose interstate activities are not the sort which make him "generally equipped to handle litigation away from his business location." 1966 McKinney's Session Laws, 2786, 2788. For this reason, we affirm the judgment of the District Court dismissing the plaintiff's complaint.

4. *Riggall v. Washington County Medical Society*, 249 F.2d 266 (8th Cir. 1957), *cert. denied*, 355 U.S. 954, 78 S.Ct. 540, 2 L.Ed.2d 530 (1958); *Matter of Freeman*, 34 N.Y.2d 1, 355 N.Y.S.2d 336, 311 N.E.2d 480 (1974).