**DU–AL CORPORATION, Appellant,**

v.

**RUDOLPH BEAVER, INC., and John R. Beaver, Appellees.**

**No. 76–1071.**

United States Court of Appeals, Fourth Circuit.

Argued June 11, 1976.

Decided Aug. 30, 1976.

---

F. Prince Butler, Arlington, Va. (Alan E. J. Branigan, Griffin, Branigan & Butler, Arlington, Va., on brief), for appellant.

Thomas C. Beach, III, Baltimore, Md. (Roger A. Clapp, Clapp, Somerville, Black & Honemann, Baltimore, Md., on brief), for appellees.

Before WINTER and BUTZNER, Circuit Judges, and CLARKE,* District Judge.

WINTER, Circuit Judge:

Du-Al Corporation (Du-Al), a Maryland corporation, sued Rudolph Beaver, Inc. (Beaver), a Massachusetts corporation, and John R. Beaver, an individual domiciled in Massachusetts, in Maryland. Du-Al alleged Beaver's breach of a contract under which Beaver was to have the exclusive right to distribute surgical instruments manufactured by Du-Al under a patent owned by it "throughout the world," including the right to grant sub-licenses. Du-Al also alleged violations of the federal anti-trust laws. The district court granted the motions of both defendants to dismiss for lack of personal jurisdiction. It also ruled that venue was improper under 28 U.S.C. § 1391(b) because the action was not founded solely on diversity of citizenship and it was undisputed that defendant John R. Beaver did not reside in Maryland.

Du-Al accedes to the dismissal of John R. Beaver, but it has appealed the district court's decision that it lacked personal jurisdiction over Beaver. We reverse as to Beaver. We conclude that Beaver was both "doing business" in Maryland and is alleged to have caused tortious injury in Maryland by an act or omission in Maryland within the meaning of Maryland's long-arm statute. Because Beaver was "doing business" in Maryland, venue was in the District of Maryland under 28 U.S.C. § 1391(c).

I.

Since personal jurisdiction over Beaver was purportedly obtained under Rule 4(e),

---

* Honorable J. Calvitt Clarke, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

**1232**

F.R.Civ.P., by personal service in Maryland under Maryland's long-arm statute, we look initially to the law of Maryland to determine the amenability of a nonresident defendant to service of process. Maryland's statute, Md. Code, Courts and Judicial Proceedings, § 6–103,[1] has been construed by Maryland's highest court as giving the Maryland courts personal jurisdiction "over all out of state persons and corporations which constitutionally could be reached as having had sufficient Maryland contacts, under the jurisdictional yardsticks established by the Supreme Court in cases such as *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)." *Gilliam v. Moog Industries, Inc.,* 239 Md. 107, 111, 210 A.2d 390, 392 (1965) (citations omitted). *See also Novack v. National Hot Rod Association,* 247 Md. 350, 231 A.2d 22 (1967); *Harris v. Arlen Properties, Inc.,* 256 Md. 185, 260 A.2d 22 (1969).

■ In *McGee,* on which the Court of Appeals of Maryland relied in *Gilliam,* the Supreme Court ruled that it was "sufficient for purposes of due process that the suit was based on a contract which had substantial connection with" the state asserting jurisdiction. 355 U.S. at 223, 78 S.Ct. at 201. This broad holding was somewhat qualified by the caveat in the Supreme Court's decision, the next year, in *Hanson* that "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State . . . ." 357 U.S. at 253, 78 S.Ct. at 1240. From *Gilliam, McGee* and *Hanson,* we conclude that the Maryland courts could and would assert jurisdiction over a party to a contract in a suit for breach of that contract if the party has performed "purposeful acts" in Maryland "in relation to the contract, albeit preliminary or subsequent to its execution." *Novack v. National Hot Rod Ass'n,* 247 Md. at 357, 231 A.2d at 26 (1967), *quoting with approval Longines-Wittnauer Watch Co. v. Barnes & Reinecke,* 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75 (1965) (interpreting a New York long-arm statute similar to Maryland's).

■ The material facts in the instant case are not in dispute. The contract was negotiated in Massachusetts, and a writing embodying it was prepared there, signed by Beaver, and sent to Du-Al in Maryland. Du-Al's president proposed several minor changes to Beaver over the telephone, to which Beaver agreed. Du-Al's president then signed the contract and sent it back to Beaver in Massachusetts. Whether or not the contract was technically made in Maryland, it is clear that steps preliminary to its execution took place there, and that Beaver contemplated that the contract would have been made in Maryland if Du-Al had signed it without modification.

After performance of the contract began, Du-Al allegedly developed an improved model instrument under its patent and it requested Beaver to distribute it in lieu of the original model, in addition to the original model or on an experimental basis. Beaver allegedly refused because of the price fixed by Du-Al and allegedly refused to permit others to distribute it. Beaver allegedly also failed to pay for old model instruments that it had purchased, falsely reporting that some were defective and fraudulently returning old instruments

---

1. In pertinent part, § 6–103 provides:
   (a) *Condition.*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
   (b) *In general.*—A court may exercise personal jurisdiction over a person, who directly or by an agent:
   (1) Transacts any business or performs any character of work or service in the state;
   \* \* \* \* \* \*
   (3) Causes tortious injury in the state by an act or omission in the state;
   (4) Causes tortious injury in the state or outside of the state by an act or omission outside the state if he regularly does or solicits business, engages in any other persistent course of conduct in the state or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the state . . . .

which were falsely claimed to be newly purchased instruments.

When viewed broadly, the contract basically obligated Beaver to do two things. First, it was to purchase surgical instruments from Du-Al, f.o.b. Du-Al's Maryland plant. That the purchases were to be made in Maryland is clear from the unambiguous language of the contract: "all risks of loss of, or damage to, Instruments will become the sole responsibility of BEAVER upon delivery by DU–AL to the designated carrier." Pursuant to the contract, Beaver took delivery of instruments in Maryland. Du-Al claims that Beaver has failed to pay for some of the instruments so purchased, that it made false representations in Maryland about some of the instruments purchased, and that it improperly returned some of them.

Second, the contract implicitly required Beaver to use its best efforts to distribute the instruments, inasmuch as it was made, "exclusive distributor throughout the world." Through its agents, Beaver did distribute instruments in Maryland. One of Du-Al's claims is that Beaver did not use its best efforts in so doing, that it declined to distribute the improved model or to permit others to do so, and that Beaver falsely and fraudulently reported the quality and cleanliness of surgical instruments received by Beaver from Du-Al.

Thus, in at least two respects, the contract was to be performed by Beaver in Maryland, Beaver did perform in part in Maryland, and its performance is now alleged to be defective, incomplete, tortious, or in violation of the antitrust laws. In addition, Maryland was the site either of the final execution of the contract, or of steps preliminary to its execution. There is thus no doubt that in entering into and performing the contract Beaver "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1240. This suit is "based on a contract which had substantial connection with" Maryland. *McGee,* 355 U.S. at 223, 78 S.Ct. at 201.

We therefore conclude that the Maryland courts would assert jurisdiction over Beaver, and could constitutionally do so, under the concept that Beaver was engaged in activities or committed acts within the meaning of § 6–103(b)(1), (3) and (4). We think it clear that Beaver's alleged causes of action "arose" from these acts within the meaning of § 6–103(a). *Malinow v. Eberly,* 322 F.Supp. 594, 599–600 (D.Md.1971). We think also that collectively these activities constituted "doing business" in Maryland within the meaning of 28 U.S.C. § 1391(c), and venue lies, *inter alia,* in the District of Maryland.

*REVERSED AND REMANDED.*