ASSOCIATED AMERICAN ARTISTS, INC., Plaintiff,

v.

BREVARD COMMUNITY COLLEGE, Defendant.

No. 80 Civ. 3979 (MEL).

United States District Court, S. D. New York.

Feb. 19, 1981.

Graham & Simon, P. C., New York City, for plaintiff; William J. Mullin, New York City, of counsel.

Larry M. Hirschenbaum, Fresh Meadows, N. Y., for defendant.

LASKER, District Judge.

Brevard Community College ("Brevard") moves to dismiss the complaint on the ground that it is not amenable to suit in New York. The motion is granted.

Associated American Artists, Inc. ("Associated") is a New York company involved in renting out various artworks for display. Brevard is a community college located in Florida. In October 1977, upon learning that Associated had traveling exhibits available, Professor Feryle Somach-Wright of Brevard wrote to Associated requesting more information about the specific exhibits available and about how to order them for the college. In November 1977, Associated sent Professor Somach-Wright a list of available exhibits and in December 1977, Professor Somach-Wright wrote to Associated requesting the Milton Avery show for rental during either September or November 1978. In February 1978, after a further exchange of letters, Professor Somach-Wright wrote to reserve the Milton Avery exhibit for a November 1978 show at Brevard. While there is some dispute whether Associated ever confirmed the reservation, the exhibit arrived at Brevard in November 1978 with an invoice and a commission agreement including a provision that Brevard bore responsibility for loss or damage to the work from the time it was delivered until the time it was returned and received by Associated. Upon receipt of the exhibit in Florida, Professor Somach-Wright telephoned Associated and made arrangements for the return of the exhibit in December. After exhibiting the work, Brevard returned it to Associated in New York. Associated seeks to recover for alleged loss and damage to the work.

Associated contends that Brevard is subject to suit in New York under N.Y.C.P. L.R. § 302(a)(1), which grants personal jurisdiction over any non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state" with respect to a cause of action arising from those acts. The dispositive question under § 302(a)(1) is whether, "looking at the totality of defendant's activities within the forum," the defendant has performed purposeful acts in New York in relation to the contract. *Longines-Wittnauer Watch Co. v. Barnes & Reineche, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), *cert. denied sub nom. Estwing Manufacturing Co. v. Singer*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1966).

Associated argues that by contacting Associated in New York by letter, by agreeing to rent the exhibit from a New York company and to return the goods to New York while bearing the risk of loss or damage, and by making payment by mail to Associated's New York office, Brevard committed purposeful acts in New York in relation to the contract.

Associated's contentions are unpersuasive. The two cases on which Associated primarily relies both involved continuing contact with New York during the course of the performance of the contracts at issue. In *Sterling National Bank and Trust Co. of New York v. Fidelity Mortgage Investors*, 510 F.2d 870 (2d Cir. 1975), jurisdiction under § 302(a)(1) was found where the defendant had not only agreed that the note at issue would be payable in New York, but also, as the court emphasized, had arranged to have the borrowed funds credited to its New York bank account, had made a visit to New York to negotiate the note, and had agreed to keep as security a compensating balance in a New York bank account for the duration of the note. In *China Union Lines, Ltd. v. American Marine Underwrit-*

*ers, Inc.*, 454 F.Supp. 198 (S.D.N.Y.1978), jurisdiction under § 302(a)(1) was exercised when the defendant had not only directed letters, telephone calls and messages to the New York plaintiff in relation to the contract, but also had negotiated the contract through a broker in New York, had arranged to have all payments due under the contract mailed from New York and had agreed to make all its payments through a New York bank.

Unlike the defendants in *Sterling* and *China Union*, Brevard had no continuing involvement in New York with respect to the transaction. Brevard simply executed a one-time rental of an art exhibit from a New York company. Brevard's solicitation by mail in New York and its receipt of the goods from New York are not sufficient purposeful acts to confer jurisdiction in New York. *Aero-Bocher Knitting Mills v. Allied Fabrics*, 54 A.D.2d 647, 387 N.Y.S.2d 635, 637 (1st Dep't 1976). Moreover, where, as here, it was the New York plaintiff, Associated, which set this contract term, not Brevard, the foreign defendant, the fact that Brevard may have borne the risk until the goods were returned in New York cannot be viewed as a purposeful act on its part in New York. *See Galgay v. Bulletin Co.*, 504 F.2d 1062, 1066 (2d Cir. 1974).

Finally, it should be observed that acceptance of Associated's contention that jurisdiction under § 302(a)(1) can be exercised over a foreign defendant who merely reserved and rented goods from a New York company would not only be adverse to New York's public interest by making out-of-staters wary to communicate with New York businesses, but would also raise serious due process questions. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). If Associated wishes to subject its customers to suit in New York, it can insist on such jurisdiction as a contractual matter. It cannot base jurisdiction, however, on the fact that a foreign plaintiff happened to rent goods from a New York company.

Accordingly, Brevard's motion to dismiss is granted.

It is so ordered.