James R. VERNER, Plaintiff,

v.

MORAN TOWING & TRANSPORTATION CO., Inc., Defendant and Third-Party Plaintiff,

v.

GULFPORT SHIPBUILDING CORPORATION, Baldwin-Lima-Hamilton Corporation and Jered Industries, Inc., Third-Party Defendants.

No. 62 Civ. 2596.

United States District Court
S. D. New York.

May 9, 1966.

■■■■■■

---◆---

Burlingham, Underwood, Barron, Wright & White, New York City, for defendant and third-party plaintiff, Moran Towing & Transportation Co., Inc., William M. Kimball, Gerald S. Rourke, New York City, of counsel.

Mendes & Mount, New York City, for third-party defendant, Gulfport Shipbuilding Corp., Alfred A. Lohne, Edmond A. Kavounas, Jr., New York City, Richard L. Weaver, Bronxville, N. Y., of counsel.

## OPINION

LEVET, District Judge.

In this seaman's action under the Jones Act, 46 U.S.C. § 688, the plaintiff Verner seeks to recover damages from Moran Towing & Transportation Co., Inc. (hereinafter "Moran") for personal injuries sustained on December 24, 1961 aboard the tugboat "M. Moran" at Pusan, Korea because of an alleged failure of the tugboat's steering mechanism. Moran impleaded Gulfport Shipbuilding Corporation (hereinafter "Gulfport"), the builder of the tug, in addition to two other corporations,[1] seeking indemnity on two grounds, breach of warranty and negligence. Gulfport now moves, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss Moran's third party complaint upon the ground that this court does not have in personam jurisdiction over Gulfport. Gulfport was served in Texas. There is no doubt that the manner of service was proper.[2] The question is whether a basis for this court's jurisdiction over Gulfport exists.

■ It is clear that the bases of in personam jurisdiction of the New York Civil Practice Law and Rules (hereinafter CPLR), particularly Sections 301 and 302, may be applied to third party claims in actions in this district. Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 585–586 (2nd Cir. 1965). Moran does not contend that jurisdiction exists here by reason of CPLR § 301; indeed, in light of the facts which will be developed below, any such claim would be fruitless. See Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915 (1917) (common law "doing business" test). Rather, Moran claims in personam jurisdiction exists pursuant to CPLR § 302(a) (1) on the theory that its cause of action for indemnity arises from Gulfport's transaction of business within New York. Moran also makes the claim that Rule 14(a) of the Federal Rules of Civil Procedure supports jurisdiction here.

CPLR § 302(a) (1) provides as follows:

"§ 302. Personal jurisdiction by acts of non-domiciliaries

"(a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:

"(1) transacts any business within the state * * *."

Gulfport is a Texas corporation, having its office and place of business in Port Arthur, Texas. There it engages in the business of building and repairing ships. Gulfport never has and does not now maintain any office, employees, sales representatives, or agents in New York. It does not have a mail drop or telephone listing in New York. Nor has it ever advertised in any New York newspapers or other periodicals, all its advertising

---

1. Baldwin-Lima-Hamilton Corporation and Jered Industries, Inc., who are not parties to this motion.

2. Moran served Gulfport by giving a summons to the Marshal in the Southern District of New York who, in turn, gave it to a Marshal in Texas, who then served it upon Gulfport.

having been in national trade journals. Furthermore, Gulfport has never appointed any person, organization, or firm to act as its agent in New York, nor has it qualified to do business in New York.

The transaction of business in New York which allegedly supports jurisdiction here centers around Gulfport's construction of the tugboat "M. Moran" for Moran. In 1960 it became known in the shipbuilding industry that Moran was interested in a sea-going tug. After an exchange of letters and telephone calls between Gulfport in Texas and Moran in New York, it was agreed that Gulfport would build the tug in Port Arthur, Texas. Preliminary plans were then mailed by Gulfport to Moran, and after negotiating the contract by mail and telephone, Gulfport, on August 31, 1960, sent Moran a proposed contract with the price left blank. On September 27, 1960, E. W. McCarthy, then president of Gulfport, visited New York and discussed the contract with Moran's attorney, who made some final changes and insertions in the proposed contract. The contract was then signed, apparently in New York, by Thomas J. Coyle, vice-president of Tug Marion Moran, Inc., a subsidiary of Moran. McCarthy did not sign the contract at that time because financing was not complete and because approval by Gulfport's home office was required. Rather, McCarthy took the contract, unsigned by Gulfport, with him on September 29, 1960, when he returned to Port Arthur, where on October 6, 1960 Gulfport signed it and then returned it to Moran in New York. The contract is dated September 28, 1960. It also appears that McCarthy visited New York some time in August, 1960 and that he may have made other visits to New York after September, 1960, but it does not appear that any of these trips was directly related to the Gulfport-Moran contract.

In due course, construction of the tug commenced, and during the construction Gulfport installed the steering mechanism whose failure allegedly caused plaintiff's injuries. Under Article 1 of the Construction Contract, Gulfport ex-

pressly warranted that "the workmanship and construction shall be first class, all in accordance with best marine practice for work of like nature." Further, in Article 17 Gulfport guaranteed to repair or replace any defects in material or workmanship discovered within twelve months after delivery of the tug, or to pay for the cost of any such repairs or replacements if done by someone other than Gulfport.

After the tug was completed in September, 1961, Moran accepted delivery at Port Arthur, Texas. A photograph taken of the tug before its first voyage shows lettering by the stern consisting of the tug's name, "M. Moran," and its home port, New York. After delivery, the tug left Port Arthur bound for Korea where the accident which is the subject of the main action occurred.

Briefly stated, the problem here is whether the above facts give this court jurisdiction over Gulfport because it has "transact[ed] any business" within New York. This case as any other in this jurisdictional area must be resolved in light of its own facts. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952). It must also be decided within the guidelines defining the scope of CPLR § 302 (a) (1) which have been established by the New York Court of Appeals. See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y. S.2d 8, 209 N.E.2d 68 (1965); Singer v. Walker, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965); Lewin v. Bock Laundry Mach. Co., 16 N.Y.2d 1070, 266 N.Y.S.2d 391, 213 N.E.2d 686 (1965); Kramer v. Vogl, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966).

In the Longines-Wittnauer case, on the basis of CPLR § 302(a) (1), jurisdiction was sustained over a foreign corporation where key personnel came to New York to discuss the contract in question where, although the contract was executed outside New York by the defendant Barnes & Reinecke, Inc., it recited that it was made in New York, where a supplemental

agreement was executed by the defendant in New York, where officers and employees of the defendant came to New York in connection with the performance of the contract, and where the defendant shipped the machines in question into New York and participated in their installation.

In the Singer case, jurisdiction was sustained under Section 302(a) (1) where the non-domiciliary defendant had shipped substantial quantities of its products into New York as the result of solicitation by its manufacturer's representative in New York and where the injury-causing product, purchased from a New York dealer, was one of those products. Similarly, in the Lewin case, jurisdiction was sustained where the foreign defendant had a New York sales agent.

In the Kramer case, however, the Court of Appeals held that Section 302(a) (1) did not give in personam jurisdiction over a non-resident who never comes into New York but who sells and sends goods into New York pursuant to orders sent from within New York.

In the present case, the contract was not executed by Gulfport in New York, but that in itself is not controlling for, as Judge Fuld wrote in Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra, 15 N.Y.2d at 457, 261 N.Y.S.2d at 18, 209 N.E.2d at 75:

"  *   *   *  Therefore, even though the last act marking the formal execution of the contract may not have occurred within New York, the statutory test may be satisfied by a showing of other purposeful acts performed by the appellant in this State in relation to the contract, albeit preliminary or subsequent to its execution. [footnote omitted]"

However, the several factors which combined to sustain jurisdiction in the Longines-Wittnauer case are not present in this case. Here, from the facts as stated above, it appears that the only connection of Gulfport with New York is that the contract for the tug, at least in part, was negotiated in New York and

was there signed by Moran. The actual construction and any breach of warranty took place in Texas; delivery was in Texas. The injuries occurred in Korea. Furthermore, Gulfport had no sales representatives in New York. Also, the fact that the tug's home port was New York is not controlling since the tug was a sea-going tug and might be used anywhere in the world.

Thus, it seems that this case presents a situation on which the Court of Appeals has not ruled which falls between the Longines-Wittnauer case, where the non-domiciliary defendant had several contacts with New York, and the Kramer case, where the defendant never came to New York. To my mind, the fact that part of the contract negotiations, and an insubstantial part at that, took place in New York is insufficient to sustain jurisdiction under CPLR § 302(a) (1).

Decisions in lower New York courts, holding that mere negotiations in New York prior to the contract do not satisfy the jurisdictional requirements of CPLR § 302(a) (1), support this conclusion. Old Westbury Golf and Country Club, Inc. v. Mitchell, 44 Misc.2d 687, 254 N.Y.S.2d 679 (Sup.Ct.1964), aff'd mem. 24 A.D.2d 636, 262 N.Y.S.2d 438 (1st Dept. 1965); Irgang v. Pelton & Crane Co., 42 Misc.2d 70, 247 N.Y.S.2d 743 (Sup.Ct.1964). To the same effect is a decision of the Illinois Supreme Court construing the statute after which CPLR § 302(a) (1) was fashioned. Grobark v. Addo Mach. Co., 16 Ill.2d 426, 158 N.E. 2d 73 (1959). I, therefore, hold that Gulfport has not transacted any business in New York within the meaning of CPLR § 302(a) (1). Gulfport's activities in New York, in my view, have not been substantial enough to meet the statutory standard.

Little need be said about Moran's claim that Rule 14(a) of the Federal Rules of Civil Procedure provides a basis for this court's jurisdiction over Gulfport. Rule 14(a) merely allows impleader. On its face, it does not provide an independent basis for in personam juris-

diction. A difficult question is posed, however, whether a rule covering the issue of in personam jurisdiction should be fashioned expressly for third party claims. See Agrashell, Inc. v. Bernard Sirotta Co., supra, 344 F.2d at 585. Such question need not be decided here because, in my opinion, no such rule would be broader than CPLR § 302(a) (1).

Accordingly, Gulfport's motion to dismiss the complaint is granted.

Settle order on notice.