defendants' liability arose out of the same contract.

The magistrate based the differing results on the fact that Newman's Truck Service, Inc. could not be held liable under the contract until extrinsic facts were examined to determine that it was, in fact, the successor employer of Bill Newman. Bill Newman, individually, however, was said to be liable under his obligation to pay arising out of the contract, with no consideration of extrinsic facts necessary. This Court does not believe that such a fine distinction can be drawn.

Initially, it must be pointed out that the fact that Newman's Truck Service, Inc. was not a party to the original contract does not preclude plaintiff from relying on § 516.-110(1), were plaintiff able to assert an action based upon a writing for the payment of money. *Silton v. Kansas City*, 446 S.W.2d 129, 132 (Mo.1969). It is this Court's opinion, though, that both defendants are liable for breach of contract and are governed by the five year statute of limitations of § 516.120(1), R.S.Mo. (1969).

To apply § 516.110(1) in the present situation would render § 516.120(1) inapplicable in the majority of cases to which it now applies. From the decided cases it appears that § 516.110(1) applies to actions upon notes, bills, negotiated instruments and writings of that nature; it does not appear to be applicable to suits brought for breach of contracts for the sale of goods or services. *Silton*, id.; *Bangert v. Boise Cascade Corporation*, 527 F.2d 902 (8th Cir. 1976); *Sam Krause Company v. State Highway Commission*, 416 S.W.2d 639 (Mo.1967); *Martin v. Potashnick*, 358 Mo. 833, 217 S.W.2d 379 (1949).

Just as extrinsic facts had to be examined to determine the liability of Newman's Truck Service, Inc., so too extrinsic facts are necessary to a determination of Bill Newman's liability. The Missouri Supreme Court stated in *Silton*, supra, at 132:

> *Until the contingency of establishing legal liability on the part of the defendants has been met*, neither the defendants nor the insurer under the agreement would have any obligation to pay money to anyone claiming loss by reason of the use of the lockers. *Thus the proof of extrinsic facts would be required to establish both the existence of the obligation as well as the amount of the loss.* (Emphasis added).

The same is true in the present situation. This case involves a claim of breach of contract, and, as such, necessitated proof of liability on the part of defendants. Such liability was shown through the proof of extrinsic facts. Therefore, the five year statute of limitations of § 516.120(1), R.S.Mo. (1969) is applicable to all plaintiffs' claims.

The Court finds no merit in the remaining contentions raised by the parties. Therefore, the magistrate's report will be accepted in all respects except as to the applicable statute of limitations.

**NATIONAL SPINNING CO., INC. Plaintiff,**

v.

**TALENT NETWORK, INC., Defendant.**

**No. 79 Civ. 3968 (LFM).**

United States District Court, S. D. New York.

Dec. 31, 1979.

**1244**

Layton & Sherman, New York City, for defendant, by Robert Layton and Thomas L. Abrams, New York City.

Otterbourg, Steindler, Houston & Rosen, P. C., New York City, for plaintiff, by Bernard Beitel and Anthony M. Piccione, New York City.

## OPINION

MacMAHON, District Judge.

Defendant moves, pursuant to Rule 12(b)(2), Fed.R.Civ.P., to dismiss the complaint for lack of personal jurisdiction.

Defendant, Talent Network, Inc. ("TNI"), is an Illinois corporation with no offices, telephone listings or employees in New York. It is neither registered to do business, nor does it do business in this state.

Plaintiff, National Spinning Co., Inc. ("National"), is a New York corporation which seeks to recover a $15,000 advance royalty payment and additional damages arising from the alleged breach by TNI of a licensing agreement entered into by the parties in April 1978. Under this agreement, National was to acquire from TNI the right to use various works of art by the late artist Pablo Picasso in "wall hanging" kits which it planned to manufacture and distribute commercially.

The parties began their discussions of a proposed licensing arrangement in the spring of 1977 when National approached TNI about the idea at a trade fair held in Chicago. Negotiations continued for approximately one year and involved two visits by a representative of National to TNI's office in Illinois, as well as numerous telephone calls.

The parties reached agreement on the substantive commercial terms of a licensing arrangement in late August 1977, when National's president wrote TNI a letter confirming the parties' understanding of the proposed terms "subject to the mutually satisfactory negotiation of a final contract." It is undisputed that agreement on all of the terms set forth in the letter, including the product to be licensed, royalty rate, terms of payment and duration of the license, was reached outside New York State.

The above terms were incorporated into a draft of TNI's standard licensing agreement by Milton Kayle, Esq., who sent the proposed draft to plaintiff's headquarters in New York City on February 17, 1978. Counsel for plaintiff, Arnold Schlanger, Esq., subsequently requested a meeting with Mr. Kayle to discuss a number of proposed changes.

Messrs. Kayle and Schlanger met for four hours in New York City on April 10, 1978.

In negotiating the final terms of the license agreement, they made a number of changes in the proposed draft; all its substantive commercial terms, however, remained unaltered from the parties' original understanding. Defendant later signed the final document in Illinois, and the alleged breach apparently occurred in that state as well. Plaintiff here relies solely on the New York City meeting to establish jurisdiction *in personam* over defendant.

■ In determining personal jurisdiction in a diversity action, we apply the law of the forum state. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc). Plaintiff predicates jurisdiction on New York's long-arm statute, CPLR § 302(a), which provides in pertinent part:

"As to a[ny] cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state . . . .."

The New York statute thus requires not only that the defendant "transact business" within this state, but also that plaintiff's cause of action arise out of such transaction.

There is no dispute that plaintiff's cause of action arose from the contract which was the subject matter of the April 10 meeting. Thus, the sole question for decision is whether a single four-hour meeting in New York City between the parties' attorneys to negotiate the final terms of a contract constitutes a "transaction of business" within this state for the purposes of CPLR § 302(a).

Before considering whether defendant's activities are sufficient to satisfy New York's long-arm statute, we note that it is not our task to decide whether a state could, if it wished, exercise personal jurisdiction under these circumstances within the constitutional confines of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *Hansen v.*

*Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). "The question . . . to be first decided is not what jurisdiction New York is allowed under the Federal Constitution, but what jurisdiction it has legislated unto itself within its permissive area by enacting CPLR § 302(a)." *Old Westbury Golf & Country Club, Inc. v. Mitchell*, 44 Misc.2d 687, 254 N.Y.S.2d 679, 681 (Sup.Ct. Nassau Co. 1964).

The starting point in our analysis is the opinion of the New York Court of Appeals in *Longines-Wittnauer v. Barnes & Reinecke*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). There, the court sustained jurisdiction over a foreign defendant on the totality of its purposeful activity in New York, including "substantial preliminary negotiations through high-level personnel during a period of some two months," the actual execution of a supplementary contract and shipment of two machines into this state which were installed and tested by defendant's engineers. *Longines-Wittnauer*, however, left open the question of what minimum contacts with New York are necessary for jurisdiction under § 302(a).

The New York Court of Appeals later limited the *in personam* jurisdiction of New York courts in *McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967). *McKee* grew out of the alleged breach of a distributorship agreement by a defendant whose only contact with New York in connection with the agreement was a single visit by a "high-level" employee and an area sales representative. Several years after the agreement had been entered into, they came to this state to attempt to resolve disagreements over the specifications for sound systems to be supplied by defendant to various schools in Westchester County. Defendant's employees spent less than a full working day on the matter, and the alleged breach occurred months later in Illinois. Characterizing the defendant's nexus with New York as "infinitesimal," the court refused to sustain personal jurisdiction over the defendant, stating that "[o]therwise, every corporation whose officers or sales per-

sonnel happen to pass the time of day with a New York customer in New York runs the risk of being subjected to the personal jurisdiction of our courts." 20 N.Y.2d at 382, 283 N.Y.S.2d at 37, 229 N.E.2d at 607.

The same court was later presented with "the clearest sort of case" concerning § 302(a) jurisdiction in *Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977). There, defendant traveled to plaintiff's corporate headquarters in New York where he was interviewed for a job as salesman in New England. Defendant accepted the plaintiff's offer in New York, and all important terms of the employment agreement, including sales territory and rate of commissions, were embodied in a memorandum made there and given to defendant that same day. Personal jurisdiction over the defendant was upheld based on "a single but complete transaction of business in the forum." 41 N.Y.2d at 653, 394 N.Y.S.2d at 848, 363 N.E.2d at 555.

The jurisdictional facts in the instant case fall somewhere between *McKee* and *Reiner*. We are persuaded, however, that a New York court would find itself without jurisdiction over defendant's person and accordingly grant defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(2).

While *McKee* did not deal with the *negotiation* of a contract in this state, defendant's activities here are similarly "infinitesimal." Outside counsel spent only one half of a working day negotiating in this state, even less time than defendant's employees spent in *McKee*. Furthermore, the parties had previously agreed upon all substantive business terms of the license agreement by telephone and mail. Clearly, this does not amount to a "single but complete transaction of business" within this state under the holding in *Reiner & Co. v. Schwartz, supra*.

Federal case law, moreover, although not determinative in interpreting a state statute, supports the proposition that where jurisdiction under § 302(a) is predicated solely on contract negotiations in this state, such negotiations must be of "substantive importance . . . in concluding the contract." [1] Our Court of Appeals has declined to uphold long-arm jurisdiction, however, "where the negotiations relied upon took place after the terms of the contracts had already been fixed." [2] Similarly, in *Verner v. Moran Towing & Transportation Co.*, 258 F.Supp. 169 (S.D.N.Y. 1966), the court held there was no personal jurisdiction over a foreign defendant where most key contract terms were negotiated outside New York, even though the parties had apparently reached agreement concerning the contract price within this state. Applying these principles to the instant case, we find the extent of defendant's negotiations in New York insufficient to satisfy the statutory standard.

Plaintiff's reliance on *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1972), is misplaced. There, long-arm jurisdiction was sustained over a California bidder who purchased art through an agent at a New York auction, thereby completing within this state the entire transaction which was the subject matter of plaintiff's suit. Defendant's contacts with New York here, in sharp contrast to *Parke-Bernet*, were only a small and relatively insignificant part of the long process culminating in the execution of a contract.

Upholding long-arm jurisdiction here would have the unfortunate side effect of subjecting foreign corporations to suit in New York simply because they retain inde-

---

1. *National Iranian Oil Co. v. Commercial U. Ins. Co.*, 363 F.Supp. 129, 134 (S.D.N.Y.1973); see also *Liquid Carriers Corp. v. American Marine Corp.*, 375 F.2d 951 (2d Cir. 1967) (defendant's officer made three separate trips to New York to negotiate the contract); *Northland Paper Co. v. Mohawk Tablet Co.*, 271 F.Supp. 763 (S.D.N.Y.1967) (critical elements of a contract, including price, delivery and shipping set at a meeting in New York); *ECC Corp. v. Slater Electric, Inc.*, 336 F.Supp. 148 (E.D.N.Y.1971) (jurisdiction predicated on "the critical meeting of the contracting parties' minds" in New York).

2. *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, n.4 at 91 (2d Cir. 1975).

pendent New York counsel to draw a contract having no meaningful relation to this state. At least where counsel's role is limited, as it was here, to negotiating minor terms and reducing to writing a bargain which has already been struck in another jurisdiction, we see no reason to compel his client to defend a suit in this state. Our decision here subjects plaintiff to no particular hardship, moreover, since defendant remains fully amenable to suit elsewhere.

Accordingly, we grant defendant's motion to dismiss for lack of personal jurisdiction. Settle judgment on notice within twenty (20) days.