[881 NE2d 830, 851 NYS2d 381]

RACHEL EHRENFELD, Appellant, v KHALID SALIM BIN MAHFOUZ, Respondent.

Argued November 15, 2007; decided December 20, 2007

## POINTS OF COUNSEL

*Kornstein Veisz Wexler & Pollard, LLP,* New York City (*Daniel J. Kornstein, Mikaela A. McDermott, Mark Platt, Ina R. Bort, Catherine C. Montjar, David T. McTaggart* and *Amy C. Gross* of counsel), for appellant. I. Since Khalid Salim Bin Mahfouz's New York contacts, including a chilling effect, are sufficient, purposeful, affect people and events in New York, and make it foreseeable that he would be sued there, Bin Mahfouz "transacts business" in New York. (*Kramer v Vogl,* 17 NY2d 27; *Lynch v Austin,* 96 AD2d 196; *Citigroup Inc. v City Holding Co.,* 97 F Supp 2d 549; *Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443, *cert denied sub nom. Estwing Mfg. Co. v Singer,* 382 US 905; *Padilla v Rumsfeld,* 352 F3d 695, 542 US 426; *Deutsche Bank Sec., Inc. v Montana Bd. of Invs.,* 7 NY3d 65; *Opticare Acquisition Corp. v Castillo,* 25 AD3d 238; *Hanson v Denckla,* 357 US 235; *George Reiner & Co. v Schwartz,* 41 NY2d 648; *Kreutter v McFadden Oil Corp.,* 71 NY2d 460.) II. Since *Yahoo! Inc. v La Ligue Contre Le Racisme Et L'Antisemitsme* (433 F3d 1199 [2006]) provides persuasive authority based on even less compelling facts, it supports the exercise of jurisdiction here. (*Calder v Jones,* 465 US 783; *Kreutter v McFadden Oil Corp.,* 71 NY2d 460; *Banco Ambrosiano v Artoc Bank & Trust,* 62 NY2d 65; *Talbot v Johnson Newspaper Corp.,* 71 NY2d 827; *Best Van Lines, Inc. v Walker,* 490 F3d 239; *Johnson v Ward,* 4 NY3d 516; *International Shoe Co. v Washington,* 326 US 310; *McGee v International Life Ins. Co.,* 355 US 220; *Parke-Bernet Galleries v Franklyn,* 26 NY2d 13; *Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443.) III. Since Dr. Ehrenfeld's claim stems directly from Khalid Salim Bin Mahfouz's intimidation of her in New York, it "arises from" Bin Mahfouz's transaction of business in New York. (*McGowan v Smith,* 52 NY2d 268; *Kreutter v McFadden Oil Corp.,* 71 NY2d 460; *Johnson v Ward,* 4 NY3d 516.) IV. Since the exercise of jurisdiction here is fair and grounded in prece-

dent and public policy, the Court should answer the certified question in the affirmative. (*Best Van Lines, Inc. v Walker,* 490 F3d 239; *New York Times Co. v Sullivan,* 376 US 254; *Immuno AG. v Moor-Jankowski,* 77 NY2d 235, 500 US 954; *Hernandez v New York City Health & Hosps. Corp.,* 78 NY2d 687; *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369; *Hotchner v Castillo-Puche,* 551 F2d 910, 434 US 834.)

*Jones Day* (*Timothy J. Finn* and *Stephen J. Brogan,* of the District of Columbia bar, admitted pro hac vice, and *Christian G. Vergonis* of counsel), and *Bonner, Kiernan, Trebach & Crociata,* Washington, D.C. (*Michael Nussbaum* of counsel), for respondent. I. CPLR 302 (a) (1) does not authorize personal jurisdiction over a nondomiciliary whose only acts within New York were incidental to a foreign lawsuit against a New York defendant. (*Ferrante Equip. Co. v Lasker-Goldman Corp.,* 26 NY2d 280; *A. Millner Co. v Noudar, Lda.,* 24 AD2d 326; *Johnson v Ward,* 6 AD3d 286, 4 NY3d 516; *Crystal Lake Camp Corp. v Silver,* 63 Misc 2d 562; *Deutsche Bank Sec., Inc. v Montana Bd. of Invs.,* 7 NY3d 65; *Liberatore v Calvino,* 293 AD2d 217; *ISI Brands, Inc. v KCC Intl., Inc.,* 458 F Supp 2d 81; *Rescuecom Corp. v Hyams,* 477 F Supp 2d 522; *Hartford Fire Ins. Co. v California,* 509 US 764; *Padilla v Rumsfeld,* 352 F3d 695, 542 US 426.) II. Dr. Ehrenfeld's arguments rely on the wrong legal standard and should be directed to the Legislature. (*Ferrante Equip. Co. v Lasker-Goldman Corp.,* 26 NY2d 280; *Fantis Foods v Standard Importing Co.,* 49 NY2d 317; *Yahoo! Inc. v La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F3d 1199; *Opticare Acquisition Corp. v Castillo,* 25 AD3d 238; *Matter of Sayeh R.,* 91 NY2d 306; *Talbot v Johnson Newspaper Corp.,* 123 AD2d 147; *Porter v LSB Indus.,* 192 AD2d 205; *Calder v Jones,* 465 US 783; *McGowan v Smith,* 52 NY2d 268; *Hermann v Sharon Hosp.,* 135 AD2d 682.)

*Covington & Burling LLP,* New York City (*Jason P. Criss* of counsel), *Weil, Gotschal & Manges LLP* (*R. Bruce Rich* and *Jonathan Bloom* of counsel), *Jan Friedman Constantine, Fletcher, Heald & Hildreth, PLC,* Arlington Virginia (*Kevin M. Goldberg* of counsel), *Angela Mills Wade,* Brussels, Belgium, *Kurt A. Wimmer,* McLean, Virginia, *Patrick D. Maines,* Arlington, Virginia, *Richard T. Kaplar, René P. Milam,* Vienna, Virginia, *Lucy A. Dalglish,* Arlington, Virginia, *Gregg P. Leslie, Matthew B. Pollack, David A. Zapolsky,* Seattle, Washington, *Wiley Rein & Fielding,* Washington, D.C. (*Kathleen A. Kirby* of counsel), *Kai Falkenberg,* New York City, *Dow Lohnes PLLC,*

Washington, D.C. (*Jonathan D. Hart* of counsel), and *Sabin, Bermant & Gould LLP,* New York City (*Neil M. Rosenhouse* of counsel), for Advance Publications, Inc. and others, amici curiae. I. The facts presented in this appeal powerfully illustrate the danger libel tourism poses to free expression in New York. (*Bachchan v India Abroad Publs.,* 154 Misc 2d 228; *Matusevitch v Telnikoff,* 877 F Supp 1, 159 F3d 636.) II. The Court of Appeals should adopt the limited holding advocated by Dr. Ehrenfeld. (*Kreutter v McFadden Oil Corp.,* 71 NY2d 460; *Deutsche Bank Sec., Inc. v Montana Bd. of Invs.,* 7 NY3d 65; *PDK Labs, Inc. v Friedlander,* 103 F3d 1105; *McKee Elec. Co. v Rauland-Borg Corp.,* 20 NY2d 377; *Burger King Corp. v Rudzewicz,* 471 US 462; *Matter of Sayeh R.,* 91 NY2d 306; *McGowan v Smith,* 52 NY2d 268; *Legros v Irving,* 38 AD2d 53; *Best Van Lines, Inc. v Walker,* 490 F3d 239.)

**OPINION OF THE COURT**

CIPARICK, J.

The United States Court of Appeals for the Second Circuit has certified to us the question of whether CPLR 302 (a) (1) confers personal jurisdiction over a person "(1) who sued a New York resident in a non-U.S. jurisdiction; and (2) whose contacts with New York stemmed from the foreign lawsuit and whose success in the foreign suit resulted in acts that must be performed by the subject of the suit in New York" (489 F3d 542, 545 [2007]). Because these contacts do not constitute the transaction of business in this state, we conclude that CPLR 302 (a) (1) does not confer jurisdiction.

I.

Plaintiff Rachel Ehrenfeld is an author whose writing focuses on international terrorism. In 2003, Chicago-based Bonus Books published her book, Funding Evil: How Terrorism Is Financed—and How to Stop It. In that book, plaintiff asserts that defendant, Khalid Salim Bin Mahfouz—a Saudi Arabian businessman, financier and former head of the National Commercial Bank of Saudi Arabia—and his family have provided direct and indirect monetary support to al Qaeda and other "Islamist terror groups." Funding Evil was published in the United States. However, 23 copies were purchased in the United Kingdom via the Internet and a chapter of the book, accessible from the ABCNews.com Web site, was also available in that country.

Defendant maintains that plaintiff's claims regarding his ties to terrorism are false. On January 23, 2004, defendant's En-

glish counsel wrote to plaintiff and sought to have her: (i) promise the "High Court in England" that she would refrain from repeating similar allegations, (ii) destroy or deliver to him all copies of Funding Evil, (iii) issue a letter of apology (to be published at plaintiff's expense), (iv) make a charitable donation and (v) pay his legal costs in exchange for defendant's agreement to not bring a defamation action against her. When plaintiff did not accept this offer, defendant sued her, seeking damages and injunctive relief under the English Defamation Act of 1996, in the High Court of Justice, Queens Bench Division, in London.

Pursuant to an order of the English court, defendant served papers upon plaintiff at her New York City apartment on four occasions: October 22, 2004, December 30, 2004, March 3, 2005 and May 19, 2005. Plaintiff alleges that the process server who visited her on March 3 threatened her, stating: "You had better respond, Sheikh bin Mahfouz is a very important person, and you ought to take very good care of yourself."[1] In addition to serving litigation papers, defendant's English lawyers contacted plaintiff at her home in New York via mail and e-mail. These communications—received on September 22, 2004, December 9, 2004, April 26, 2005, April 27, 2005, May 2, 2005 and May 9, 2005—all concerned the English action. By these letters and e-mails, defendant's English counsel provided plaintiff with the claim in the English action, witness statements, documents supporting defendant's alleged damages and court orders. For example, the December 9 letter advised plaintiff that pursuant to an injunction issued by the English court she was under a duty to prevent Funding Evil from "leak[ing] into the [English court's] jursdiction," "England and Wales," and that if she failed to do so she could "be held in contempt of court."

Plaintiff elected not to appear in the English action.[2] She did so because of the cost of litigating in England, the procedural barriers facing a libel defendant under English law and her dis-

---

1. In an affidavit, the process server stated that plaintiff "grossly misrepresented" their meeting. He admits that he spoke to plaintiff and explained to her that she should contact a lawyer because "it looked like a default judgment had been entered against her." But he submits that during this encounter he "was cordial and professional, and in no way threatened her or used a menacing tone."

2. The English court's May 3, 2005 judgment, which accompanied its May 3, 2005 order, notes, however, that an English law firm did submit a letter on behalf of plaintiff and Bonus Books, discussing the merits of a "plea of justification" in the English action.

agreement in principle with defendant's alleged attempt to chill her speech in New York by suing in a claimant-friendly libel jurisdiction to which she lacked any tangible connection.[3] On December 7, 2004, the English court entered a default judgment against plaintiff and Bonus Books, providing for an award of damages and enjoining the further publication of the allegedly defamatory statements in England and Wales. On May 3, 2005, the English court entered a second order declaring the allegedly defamatory statements false, setting damages owed to defendant and his sons at £10,000 each, requiring plaintiff and Bonus Books to publish an apology in accordance with section 9 (2) of England's Defamation Act of 1996,[4] mandating that the December 7 injunction "shall continue in full force and effect," and awarding defendant his costs in prosecuting the English action. Defendant reported the contents of the May 3 order on his Web site (see Bin Mahfouz Information, http://www.binmahfouz.info/news_20050503.html [accessed Dec. 3, 2007]), which is accessible in New York.

Plaintiff filed suit against defendant in the United States District Court for the Southern District of New York. There, she sought a declaratory judgment that, under federal and New York law, defendant could not prevail on a libel claim against her based upon the statements at issue in the English action and that the December 7 default judgment is unenforceable in the United States and, particularly, in New York State. Defendant moved to dismiss, arguing that the court lacked subject matter and personal jurisdiction.

The district court held that it lacked personal jurisdiction under CPLR 302 (a) (1) because defendant's communications to plaintiff in New York regarding the English action and his Web site posting, "however persistent, vexing or otherwise meant to coerce, do not appear to support any business objective" (2006 WL 1096816, *4, 2006 US Dist LEXIS 23423, *14). Further, the court concluded that plaintiff's reliance upon *Yahoo! Inc. v La Ligue Contre Le Racisme Et L'Antisemitisme* (433 F3d 1199 [9th Cir 2006, en banc]), which affirmed a finding of personal

---

3. According to plaintiff, she has "never lived in England . . . [Funding Evil] was never published in England . . . and [she has] never taken any steps to cause the Book to be made available to purchasers in England or to facilitate its availability there through internet sources."

4. Section 9 (2) mandates a procedure whereby the parties are to agree upon the "content of any correction and apology, and the time, manner, form and place of publication."

jurisdiction based upon facts similar to those here, was misplaced. This was so, said the district court, because the Ninth Circuit was interpreting California's long-arm statute, which unlike CPLR 302 (a) (1), is "coextensive with Federal Due Process" standards for exercising personal jurisdiction (2006 WL 1096816, *5, 2006 US Dist LEXIS 23423, *19).

On appeal, the Second Circuit asked defendant whether he would commit to not seek enforcement of the English court's orders in the United States. In a letter to the court, defendant "decline[d] to . . . waive . . . whatever rights he may have to seek enforcement of the damage award in a U.S. court." On June 8, 2007, the Second Circuit certified to us the above-quoted question. We now answer that question in the negative, concluding that CPLR 302 (a) (1) does not confer in personam jurisdiction over defendant.

## II.

At the outset, it is important to emphasize that we are called upon to decide a narrow issue. The Second Circuit has not asked us to opine upon the propriety of English libel law or its differences from its United States and, particularly, New York State counterparts. And we decline to do so. Plaintiff and her amici argue that this case is about "libel tourism," a phenomenon that they variously describe as the use of libel judgments procured in jurisdictions with claimant-friendly libel laws—and little or no connection to the author or purported libelous material—to chill free speech in the United States. However pernicious the effect of this practice may be, our duty here is to determine whether defendant's New York contacts establish a proper basis for jurisdiction under CPLR 302 (a) (1).[5] It is to that inquiry to which we now turn.

---

5. Plaintiff correctly notes that CPLR 302 (a) (2) and (3), as codified and subsequently amended, exempt from long-arm jurisdiction defamation actions against nondomiciliaries that are predicated upon statements made in or outside of New York. Because these provisions evince the Legislature's intent to protect nondomiciliaries' free speech rights (*see Best Van Lines, Inc. v Walker*, 490 F3d 239, 245 [2d Cir 2007], citing *Legros v Irving*, 38 AD2d 53, 55 [1st Dept 1971]), plaintiff claims that they lead to the conclusion that CPLR 302 (a) (1) must be interpreted to protect New Yorkers from the alleged chilling effect of foreign libel judgments. Plaintiff fails to explain, however, how our decision here would have any effect on the practice of libel law in England. And, in any event, our task is to interpret the New York statute as written. Thus, plaintiff's arguments regarding the enlargement of CPLR 302 (a) (1) to confer jurisdiction upon "libel tourists" must be directed to the Legislature.

Plaintiff claims that defendant has transacted business in New York because he purposefully projected himself into the state to further a "foreign litigation scheme" designed to chill her speech. Defendant counters that this alleged scheme consists of contacts that are insufficient bases for jurisdiction. He states that he has transacted no business here and that his communications and activities in New York were merely incidental to the prosecution of a foreign litigation. Because none of the contacts here establish that defendant purposefully availed himself of the privileges of and benefits of New York's laws, we agree with defendant (*compare e.g. Fischbarg v Doucet*, 9 NY3d 375, 382 [2007] [decided today] [purposeful availment requires a "sustained and substantial transaction of business in New York," such as the solicitation and establishment of a continuing attorney-client relationship]).

Under CPLR 302 (a) (1) "a court may exercise personal jurisdiction over any non-domiciliary," such as defendant, "who in person or through an agent . . . transacts any business within the state" if the cause of action asserted arises out of that transaction. To determine what constitutes a transaction of business we have been guided—as was the Legislature in enacting CPLR 302 (a) (1)—by U.S. Supreme Court opinions delineating proper bases for personal jurisdiction under the Federal Due Process Clause (*see e.g. Longines-Wittnauer Watch Co. v Barnes & Reinecke*, 15 NY2d 443, 452, 458 [1965], citing, among other precedents, *International Shoe Co. v Washington*, 326 US 310, 316 [1945]). Thus, we have held that "[t]he overriding criterion" necessary to establish a transaction of business is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within [New York]" (*McKee Elec. Co. v Rauland-Borg Corp.*, 20 NY2d 377, 382 [1967], quoting *Hanson v Denckla*, 357 US 235, 253 [1958]; *accord Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65, 71 [2006]). When a defendant engages in purposeful activity here, personal jurisdiction is proper because it has "invok[ed] the benefits and protections of [our] laws" (*George Reiner & Co. v Schwartz*, 41 NY2d 648, 652 [1977] [citation omitted]; *accord Matter of Sayeh R.*, 91 NY2d 306, 319 [1997] ["(R)espondent deliberately and affirmatively sought the protection of this State's laws, and thereby (was) rendered . . . amenable to our general long-arm jurisdiction"]) and thus "should reasonably expect to defend its actions [ ]here" (*Deutsche Bank*, 7 NY3d at 71, quoting *Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 466 [1988]).

Here, none of defendant's relevant New York contacts have invoked the privileges or protections of our State's laws.[6] Quite to the contrary, his communications in this state were intended to further his assertion of rights under the laws of England. As defendant points out—and plaintiff does not dispute—his prefiling demand letter and his service of documents were required under English procedural rules governing the prosecution of defamation actions. And in none of his letters to plaintiff did defendant seek to consummate a New York transaction or to invoke our State's laws (compare e.g. Fischbarg, 9 NY3d at 382-383 [CPLR 302 (a) (1) jurisdiction proper because "defendants established a substantial ongoing professional commitment . . . governed by the laws of our state"]).

Accordingly, contrary to plaintiff's assertions, our decisions in Parke-Bernet Galleries v Franklyn (26 NY2d 13, 18 [1970] [defendant transacted business in New York by participating in and purchasing paintings from New York auctioneer via telephone]) and Sayeh R. (91 NY2d at 319 [long-arm jurisdiction proper because "(r)espondent has repeatedly invoked the aid and protection of our courts (and) . . . enlisted the aid of local police" to enforce a Florida court order]) do not support her position (see also e.g. Deutsche Bank, 7 NY3d at 72 [long-arm jurisdiction proper because "sophisticated institutional trader knowingly enter(ed) our state . . . to negotiate and conclude a substantial transaction"]).

---

**6.** Plaintiff claims that defendant's prior ownership of two New York City condominiums, his previous indictment by a New York County grand jury in connection with an investigation into his activities as an executive of the Bank of Credit and Commerce International and his status as a defendant in several civil actions arising out of the September 11 terrorist attacks, which are currently pending in the United States District Court for the Southern District of New York, are proper bases for CPLR 302 (a) (1) jurisdiction. But these contacts are irrelevant to our analysis because plaintiff's declaratory judgment action arises not out of these acts, but out of defendant's activities related to the English judgment (see Johnson v Ward, 4 NY3d 516, 520 [2005] ["coincidental" activities not related to cause of action are "too insubstantial" to support long-arm jurisdiction]).

Similarly flawed is plaintiff's assertion that defendant's "monitoring her activities in New York," by, among other things, reviewing a recent paperback edition of Funding Evil published in the United States and surveying a Web site maintained by the New York-based American Center for Democracy (www.public-integrity.org), an organization in which plaintiff serves as director, supports CPLR 302 (a) (1) jurisdiction. In an age where information about many New Yorkers can be accessed by those outside our state through a simple "Google" search, we decline to find that such "monitoring," without more, constitutes the transaction of business in New York under CPLR 302 (a) (1).

Moreover, plaintiff's reliance upon the Second Circuit's decision in *PDK Labs, Inc. v Friedlander* (103 F3d 1105 [2d Cir 1997]) is misplaced. There, the defendant, a promoter of weight-loss products, engaged a New York attorney to contact a New York corporation regarding an alleged infringement of his patents (*see id.* at 1107). In the course of his communications with the corporation, the attorney not only threatened to sue under Georgia law, he also "solicit[ed] PDK's investment in [the defendant's] weight loss product" (*id.* at 1109). It was this "persistent campaign . . . to secure PDK's investment" that, the court held, "constitute[d] business transacted in New York under CPLR § 302 (a) (1)" (*id.*). By contrast in *Beacon Enters., Inc. v Menzies* (715 F2d 757 [2d Cir 1983]), the Second Circuit held that the defendant's mailing of a "cease and desist" letter to the plaintiff in New York was not a sufficient predicate for long-arm jurisdiction (*see id.* at 766). The court reasoned that, "[i]t is difficult to characterize [a] letter alleging infringement in an unspecified locale and threatening litigation in an unspecified forum as an activity invoking the 'benefits and protections' of New York law" (*id.*). Confronted, as we are, with a demand letter sent by English solicitors requesting—among other things—"[a]n undertaking to the High Court in England" not to repeat plaintiff's alleged defamatory statements as well as defendant's service of documents and other mailings related to the English action, we, too, conclude that the defendant has not purposefully availed himself of the laws of New York.[7]

Plaintiff urges us, however, to hold that defendant's refusal to waive whatever rights he may have to enforce the English judgment in New York, constitutes a purposeful availment of this state's laws. Indeed, according to her, the "future New York contact" of potential enforcement is "crucial" to finding jurisdiction over defendant. This is so, she says, because that judgment could only be enforced here, where she resides and works, and where all her assets are located. In addition, plaintiff claims that the ongoing threat of enforcement in New York has led her to decline publishing certain articles and to attempt to conform her writing to the standards of English libel law. Plaintiff also asserts that the alleged chill caused by the English judgment

---

**7.** Plaintiff's reliance upon defendant's posting of the result of the English action on his Web site also fails to establish purposeful availment (*see Best Van Lines*, 490 F3d at 253-254 [posting of defamatory comments on "website accessible to readers in New York . . . d(oes) not constitute 'transact(ing) business' under section 302 (a) (1)"]).

has been felt by certain publishers who have accepted her work in the past, but decline to do so now for unspecified reasons, and by other authors engaged in the investigation of international terrorism whom she alleges must now tailor their writing to avoid foreign libel suits. Furthermore, plaintiff argues that the English judgment requires her to take action—issue an apology and prevent leakage of the allegedly defamatory statements into England and Wales—in New York. Because defendant purposefully filed the English action to cause these alleged New York effects, plaintiff argues that CPLR 302 (a) (1) jurisdiction is proper.

Our decision in *Ferrante Equip. Co. v Lasker-Goldman Corp.* (26 NY2d 280 [1970]) undercuts plaintiff's position. There, the appellant argued that "although respondent's acts occurred in New Jersey, they had a substantial effect on the performance of [work in] New York and for that reason we should sustain jurisdiction under CPLR 302 [(a) (1)]" (*id.* at 285). We concluded, however, that we could not do so "because appellant has been unable to point to a single transaction of business by respondent in New York" (*id.* at 284). In so holding we adopted the Appellate Division's reasoning that "[t]he mere receipt by a nonresident of a benefit or profit from a contract performed by others in New York is clearly not an act by the recipient in this State sufficient to confer jurisdiction under our long-arm statute" (*id.* at 285, quoting 31 AD2d 355, 356 [1st Dept 1969]). Here, as in *Ferrante*, the alleged effects of threatened enforcement of the English judgment may benefit defendant by chilling plaintiff's speech, but those effects do not arise from his invocation of the privileges and benefits of our State's laws. Rather, they arise from an English remedy and plaintiff's unilateral activities in New York (*see Ferrante*, 26 NY2d at 285). As such, those effects do not form a proper basis for CPLR 302 (a) (1) jurisdiction.

### III.

Finding little support in our precedents, plaintiff next asks us to adopt the holding of the Ninth Circuit in *Yahoo! Inc. v La Ligue Contre Le Racisme Et L'Antisemitisme* (433 F3d 1199 [2006]). The facts are, indeed, similar to those present here. In *Yahoo!*, two French civil rights groups obtained French court orders that required a California-based Internet service provider to prevent users of its French Web site from accessing certain Web pages associated with Nazism (*see id.* at 1202-1204). By the

terms of those orders, Yahoo! was required to alter its servers, located in California, under threat of a substantial monetary penalty. Yahoo! then sued the French groups in federal court in California, seeking a declaratory judgment that the French orders were not enforceable or recognizable in the United States based, in part, upon their interference with Yahoo!'s First Amendment rights. Affirming the federal district court, a majority of the en banc panel ruled that exercising in personam jurisdiction over the French groups was proper.[8]

The critical distinction between *Yahoo!* and the present case, however, is that the California long-arm statute applicable there is "coextensive with federal due process requirements" and thus "the jurisdictional analyses under state law and federal due process are the same" (433 F3d at 1205; *compare* CPLR 302 [a] [1], *with* Cal Civ Proc Code § 410.10 ["A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States"]). By contrast, we have repeatedly recognized that New York's long-arm statute "does not confer jurisdiction in every case where it is constitutionally permissible" (*Kreutter*, 71 NY2d at 471; *accord Talbot v Johnson Newspaper Corp.*, 71 NY2d 827, 828 [1988]). "Thus, a situation can occur in which the necessary contacts to satisfy due process are present, but in personam jurisdiction will not be obtained in this State because the statute does not authorize it" (*Banco Ambrosiano v Artoc Bank & Trust*, 62 NY2d 65, 71 [1984]). The Ninth Circuit's analysis in *Yahoo!* confirms that this is just such a situation.

Utilizing the "effects test" announced by the United States Supreme Court in *Calder v Jones* (465 US 783 [1984]) the Ninth Circuit majority held that by virtue of obtaining the French orders, the civil rights groups had "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state" (*Yahoo!*, 433 F3d at 1206). Because CPLR 302 (a) (3) expressly provides for jurisdiction in cases where—in contrast to transacting business in New York—a defendant "commits a

---

**8.** Although eight Ninth Circuit judges found personal jurisdiction over the French civil rights groups, *Yahoo!* was ultimately dismissed on the merits. This was because six judges, sitting on the 11-member panel, voted to dismiss the case for lack of personal jurisdiction and ripeness, respectively (*see* 433 F3d at 1224 ["When the votes of the three judges who conclude that the suit is unripe are combined with the votes of the three dissenting judges who conclude that there is no personal jurisdiction . . . there are six votes to dismiss"]).

tortious act without the state causing injury to person or property within the state," use of such an effects test here "would be an unwarranted extension of [section 302 (a) (1)] and a usurpation of a function more properly belonging to the Legislature" (*Ferrante*, 26 NY2d at 285-286 [rejecting attempt to "superimpose" the language of CPLR 302 (a) (3) onto section 302 (a) (1) based upon New York effect of breach of contract]). Our Legislature, unlike California's, has seen fit to confer jurisdiction in a limited subset of cases concerning nondomiciliaries. And, as we have in the past, we continue to adhere to that express mandate here.[9]

## IV.

Accordingly, the certified question should be answered in the negative.[10]

Chief Judge KAYE and Judges GRAFFEO, READ, PIGOTT and JONES concur; Judge SMITH taking no part.

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.27 of the Rules of Practice of the Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the negative.

---

9. Plaintiff's assertion that our prior reliance upon U.S. Supreme Court due process precedents when interpreting CPLR 302 (a) (1) should lead to adoption of *Yahoo!*'s holding here is unavailing. Indeed, as one member of the en banc panel opined:

"The Supreme Court has never approved such a radical extension of personal jurisdiction as would sanction the majority's holding that, by litigating a bona fide claim in a foreign court and receiving a favorable judgment, a foreign party automatically assents to being haled into court in the other litigant's home forum" (*Yahoo!*, 433 F3d at 1229 [O'Scannlain, J., concurring]; *see also id.* at 1231 [concluding that district court lacked personal jurisdiction because the French groups' "actions and contacts with . . . California were, at most, incidental to the legitimate exercise of their rights under French law"]).

10. Because we conclude that defendant has not transacted business in New York, it is unnecessary to reach the second prong of CPLR 302 (a) (1), whether plaintiff's declaratory judgment "action aris[es] out of defendant's" alleged New York contacts.