11-4231-cv
Pincione v. D'Alfonso

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 20th day of December, two thousand twelve.

PRESENT:
> ROBERT A. KATZMANN,
> BARRINGTON D. PARKER,
> RICHARD C. WESLEY,
> *Circuit Judges.*

———————————————————————————

MAX PINCIONE,

> *Plaintiff-Appellant*,

> v.                                                                 No. 11-4231-cv

LUCIANO D'ALFONSO, GUISEPPE PAOLONE, GUILIANO MILIA, BERARDO AMBROSI, BANCA CARIPE S.P.A., DARIO MANCINI, CLAUDIO DIGIACOMO, ANGELO RENZETTI, ULTRAS, STEFANO CARAVAGGIO, AND ANDREA IACONE,

> *Defendants-Appellees*.

———————————————————————————

For Plaintiff-Appellant:                 JAY GERALD SAFER, Locke Lord Bisell & Liddell LLP,
                                                       New York, N.Y.

For Defendants-Appellees
Luciano D'Alfonso,
Guiseppe Paolone,
Guiliano Milia, and
Berardo Ambrosi:               PAULA L. ZECCHINI (S. Patrick McKey, *on the brief*), Bryan
                               Cave LLP, Chicago, Ill.


For Defendants-Appellees
Banca Caripe S.p.A. and
Dario Mancini:                 FRANCESCO DIPIETRO (Craig M. Flanders, *on the brief*),
                               Wuersch & Gering LLP, New York, N.Y.


Appeal from the United States District Court for the Southern District of New York
(Crotty, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED**

**AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff Max Pincione appeals from a September 14, 2011, judgment of the United States

District Court for the Southern District of New York (Crotty, *J.*), which granted the motions of

Defendants Luciano D'Alfonso, Guiseppe Paolone, Guiliano Milia, Berardo Ambrosi, Banca

Caripe S.p.A., and Dario Mancini to dismiss Pincione's amended complaint for lack of personal

jurisdiction. Although Defendants Claudio Digiacomo, Angelo Renzetti, Stefano Caravaggio,

Andrea Iacone, and Ultras did not join in the motions to dismiss, the district court applied the

arguments presented in the motions to the non-moving defendants and, in a thorough decision,

dismissed the amended complaint with respect to those defendants as well. Pincione asserts that

the amended complaint pleads adequate facts to establish personal jurisdiction over the

defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

§ 1965(a), or the New York Long-Arm Statute, N.Y. C.P.L.R. §§ 302(a)(1), (2), (3). We agree

with the district court that it lacked personal jurisdiction over the defendants, and we affirm its

2

decision. We assume the parties' familiarity with the underlying facts and procedural history in this case.

We review a district court's dismissal of a complaint for lack of personal jurisdiction *de novo* with respect to legal conclusions. *See Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). Findings of fact regarding personal jurisdiction are reviewed under the clearly erroneous standard. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). At this preliminary stage, we construe pleadings and affidavits in the plaintiff's favor. *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).

RICO's "Venue and Process" section, § 1965(a), "does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found." *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1998). Instead, "§ 1965(a) grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs." *Id.*

Here, none of the defendants reside or can be found in New York. Thus, any personal jurisdiction based on RICO must be based on the defendants either having an agent or otherwise transacting their affairs in New York. Pincione has not pleaded facts that satisfy either of these tests. Massimiliano Naddeo is the defendants' only possible "agent" in New York. The allegations concerning his agency were entirely conclusory and thus inadequate.

Pincione has also failed to make a sufficient showing that any of the defendants "transacts his affairs" in New York. The district court held and Pincione does not dispute on appeal that the "transacts his affairs" language in § 1965 is "synonymous with the Clayton Act's,

3

15 U.S.C. § 22, requirement that a party 'transact[] business' in the venue." J.App'x at 273. "Under this definition, the business must be substantial in character, so that there is 'some amount of business continuity and certainly more than a few isolated and peripheral contacts with the particular judicial district.'" *Id.* (quoting *Gates*, 2003 WL 21297296, at *4). Pincione emphasizes that the defendants repeatedly contacted him while he was in New York. However, as the district court held, "these contacts do not rise to the level required by RICO. Rather, they were minimal and . . . solely for the purposes of a business deal that took place in Italy." J.App'x 275.

Next, Pincione contends that the district court erred in finding that it lacked personal jurisdiction over the defendants under any of three provisions of the New York Long-Arm Statute. Under § 302(a)(1), a nondomiciliary defendant is subject to personal jurisdiction if he transacts business in New York and the claims against him arise out of that business activity. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). "[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007) (internal quotation marks and alterations omitted). "Generally, telephone and mail contacts do not provide a basis for jurisdiction under CPLR § 302(a)(1) . . . ." *Gap, Inc. v. Stone Int'l Trading, Inc.*, No. 93 Civ. 0638 (SWK), 1994 WL 670020, at *7 (S.D.N.Y. Nov. 30, 1994) (internal quotation marks omitted). When determining whether a defendant transacts business in New York, courts examine the totality of a defendant's conduct and activities in New York, including "whether [he] has an on-going contractual relationship with a New York corporation[, . . .] whether the

4

contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant . . . visited New York for the purpose of meeting with parties to the contract regarding the relationship." *Sunward Elecs.*, 362 F.3d at 22 (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)).

The defendants' alleged New York conduct or contacts consisted principally of correspondence, telephone calls, and participation in telephone and video conferences. Nothing in the pleadings suggests that these communications, while numerous, were made with the intent to project the defendants into New York and avail themselves of its laws. Rather, these contacts were intended to facilitate a business deal in Italy, where the relevant corporations and bank accounts were located. Even Naddeo's visit to New York on behalf of and "in conspiracy with" the remaining defendants does not alter the analysis. Assuming Pincione adequately pleaded an agent/principal or co-conspirator relationship, Naddeo's physical presence in New York for his initial meetings with Pincione cannot transform this fundamentally Italian deal into a New York business transaction.[1]

Turning to § 302(a)(2), Pincione argues that personal jurisdiction over the defendants is proper because the torts that are the subject of the suit occurred in New York. Pincione concedes that for this argument to prevail, we must revisit our holding in *Bensusan Restaurant Corp. v. King*, 126 F.3d 25 (2d Cir. 1997). Appellant's Br. at 33 n.4. There, we adopted the New York

---

[1] In support of his position, Pincione relies principally on three decisions in which out-of-state communications were found to be sufficient to confer personal jurisdiciton over a non-resident defendant. These cases, however, are readily distinguishable. For instance, in *Fischbarg v. Doucet*, 9 N.Y.3d 375 (2007), a California-based defendant solicited and retained a New York attorney to perform legal services. Thus, the New York Court of Appeals held that the defendant had invoked the protections of the state of New York by engaging in an ongoing attorney-client relationship with a New York attorney. *Id.* at 26-35.

Court of Appeals's holding in *Feathers v. McLucas*, 15 N.Y.2d 443, 458 (1965), "that CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." *Bensusan*, 126 F.3d at 28. Moreover, we held that "[i]n the absence of some indication by the New York Court of Appeals that its decision[] in *Feathers*, . . . as interpreted and construed [by this Court], no longer represent[s] the law of New York, . . . it would be impolitic for this Court to hold otherwise." *Id.* at 29. Pincione has not identified any New York Court of Appeals decision issued after *Bensusan* that holds that *Feathers* no longer represents the law of New York. Accordingly, we decline to reconsider our interpretation of New York law as set forth in *Bensusan*.

Finally, Pincione argues that personal jurisdiction extends to the defendants pursuant to §§ 302(a)(3)(ii), which applies to anyone who personally or through an agent commits a tort outside the state, causing injury within the state, if that person "expect[s] or should reasonably expect the tortious act to have consequences in the state and derive[s] *substantial revenue* from interstate or international commerce." *Id.* (emphasis added).[2] On appeal, the parties dispute both the location of Pincione's injury and whether the defendants derive substantial revenue from interstate or international commerce. Like the district court, we hold that even if Pincione can establish that he sustained an injury in New York, he has not demonstrated that the

---

[2] The amended complaint does not assert § 302(a)(3)(i) as a basis for personal jurisdiction. Pincione's opening brief, however, alleges that jurisdiction lies pursuant to this section, which applies to a tortious act outside the state if the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state," § 302(a)(3)(i). Even if Pincione had properly pleaded personal jurisdiction under § 302(a)(3)(i), we would affirm the district court's decision. For the reasons discussed *supra*, with respect to § 302(a)(1), Pincione has not established that defendants regularly do or solicit business or engage in any other persistent course of conduct in New York. Additionally, Pincione has failed to allege that defendants "derive[] substantial revenue from goods used or consumed or services rendered" in New York.

6

defendants that he alleges caused that injury derive substantial revenue from interstate or international commerce.

An injury occurs at the place of the "original event" which caused it. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999). "This 'original event' is . . . distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort." *Id.* Generally, with commercial torts, the situs of the injury is New York if the plaintiff raises the inference that the tortious conduct caused him to lose business or customers within the state. *See e.g., Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 207 (1978) (finding § 302(a)(3)(ii) jurisdiction over foreign defendant based on its hiring of a former employee of a New York-based plaintiff to access the plaintiff's trade secrets and thereby causing plaintiff to lose customers in New York). However, "[t]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (quotation marks omitted).

We agree with the district court that Pincione satisfied the "location" element of § 302(a)(3)(ii) to the extent he alleged that the fraudulent January 2007 balance sheet he received in New York "induced him to make his initial financial investment in Pescara 70." J. App'x at 282. Nothing in the amended complaint indicates that Banca Caripe and Mancini were involved in the production or dispatch of the balance sheet. With respect to the defendants who allegedly were associated with the fraudulent January 2007 balance sheet, we find that none derive

7

substantial revenue from interstate or international commerce for substantially the same reasons identified by the district court.

In particular, we agree that plaintiff cannot establish that defendants Guiseppe Paolone, Guiliano Milia, or Berardo Ambrosi received significant revenue from international commerce by alleging that Pincione invested money in their employer, Pescara Calcio, S.p.A. Nor can Pincione demonstrate that Angelo Renzetti received substantial revenue from interstate commerce based solely on Renzetti's status as a shareholder in Pescara Calcio, S.p.A. The revenue requirement "is designed to narrow the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but whose business operations are of a local character." *LaMarca v. Pak-Mor Mfg. Co.,* 95 N.Y.2d 210, 215 (2000) (internal quotation marks and citations omitted). Any revenue Renzetti derived was from the operation of an Italian soccer club in Italy, a business with a distinctly local character. *See also Ziegler, Ziegler & Assocs. LLP v. China Digital Media Corp.*, No. 05 Civ. 4960 (LAP), 2010 WL 2835567, at *5 (S.D.N.Y. July 13, 2010) ("Capital infused into a corporation by means of stock purchases cannot be considered revenue *per se*, because it is not profit from sales. Rather, the revenues required under § 302(a)(3)(ii) must derive from sales of goods or services in interstate [or international] commerce." (internal citation and quotation marks omitted)).

We have considered Pincione's remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8